Nos. 21-5048 and 21-5100

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

———————————

UNIVERSAL LIFE CHURCH MONASTERY STOREHOUSE, et al.,
Plaintiffs-Appellees,

v.

WAYNE NABORS,
Defendant,

HERBERT H. SLATERY III, in his official capacity as Attorney General and
Reporter for the State of Tennessee, et al.,
Defendants-Appellants.

———————————

On Appeal from the United States District Court for the
Middle District of Tennessee
(No. 2:19-cv-00049)

---

## BRIEF OF DEFENDANTS-APPELLANTS

---

HERBERT H. SLATERY III
  Attorney General and Reporter
  of the State of Tennessee


ANDRÉE S. BLUMSTEIN
  Solicitor General


LESLIE ANN BRIDGES
  Senior Deputy of Public Protection
  Section and Counsel to Attorney
  General


STEVEN A. HART
  Special Counsel

MATTHEW D. CLOUTIER
  Assistant Attorney General
  *Counsel of Record*

P.O. Box 20207
Nashville, TN 37202
(615) 741-7908
Matt.Cloutier@ag.tn.gov

# TABLE OF CONTENTS

Table of Authorities ....................................................................................iv

Statement Regarding Oral Argument ........................................................1

Statement of Jurisdiction............................................................................2

Introduction.................................................................................................5

Issues Presented for Review ......................................................................5

Statement of the Case.................................................................................5

Summary of Argument ..............................................................................10

Standard of Review....................................................................................12

Argument....................................................................................................13

    I.  Plaintiffs' Claims Are Barred by the State's Sovereign
       Immunity..........................................................................................13

       A. The *Ex parte Young* exception applies when a State official
          enforces or has threatened to enforce an allegedly
          unconstitutional law....................................................................14

       B. The *Ex parte Young* exception does not apply here ...............17

          1.  The Tennessee Attorney General has no enforcement
             role..........................................................................................18

          2.  The District Attorneys General have no enforcement role .................23

    II. Plaintiffs Lack Standing to Pursue their Claims .........................25

       A. Plaintiffs cannot show an injury-in-fact.................................26

       B. Plaintiffs' requested relief would not redress their alleged
          injuries .......................................................................................32

Conclusion .................................................................................................36

Designation of District Court Documents ........................................ A-1

**Page(s)**

**Cases**

*1st Westco Corp. v. Sch Dist. Of Phila.*,
 6 F.3d 108 (3rd Cir. 1993) ................................................................................15

*Abbott Labs. v. Gardner*,
 387 U.S. 136 (1967)..........................................................................................26

*Alden v. Maine*,
 527 U.S. 706 (1999)..........................................................................................13

*Allstate Ins. Co. v. Wayne Cnty.*,
 760 F.2d 689 (6th Cir. 1985) .............................................................................4

*Babbitt . United Farm Workers Nat'l Union*,
 442 U.S. 289 (1979)....................................................................................27, 31

*Bashaw v. State*,
 9 Tenn. 177 (1829)..........................................................................................5, 6

*Bd. of Educ. of Shelby Cnty. v. Memphis City Bd. of Educ.*,
 No. 2:11-CV-02101-SHM, 2012 WL 6003540 (W.D. Tenn. Nov.
 30, 2012) ....................................................................................................19, 20

*Brennan v. Twp. of Northville*,
 78 F.3d 1152 (6th Cir. 1996) .............................................................................3

*Bryant v. Townsend*,
 221 S.W.2d 949 (Tenn. 1949) ...........................................................................5

*Burns v. Helper*,
 No. 3:18-CV-01231, 2019 WL 5987707 (M.D. Tenn. Oct. 24,
 2019) ..........................................................................................................19, 20

*Chambers v. Ohio Dep't of Hum. Servs.*,
 145 F.3d 793 (6th Cir. 1998) .............................................................................2

*Children's Healthcare is a Legal Duty, Inc. v. Deters*,
 92 F.3d 1412 (6th Cir. 1996) ....................................................................*passim*

*Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*,
149 F.3d 679 (7th Cir. 1998) ......................................................................23

*Doe v. DeWine*,
910 F.3d 842 (6th Cir. 2018) .................................................................24, 32

*Doe v. Holcomb*,
883 F.3d 971 (7th Cir. 2018) .........................................................................3

*Ex parte Young*,
209 U.S. 123 (1908)..........................................................................*passim*

*EMW Women's Surgical Ctr., P.S.C. v. Beshear*,
920 F.3d 421 (6th Cir. 2019) ..........................................................13, 16, 18

*Franks v. Kentucky Sch. for the Deaf*,
142 F.3d 360 (6th Cir. 1998) ......................................................................12

*Gentek Bldg. Prods., Inc. v. Sherwin-Williams, Co.*,
491 F.3d 320 (6th Cir. 2007) ......................................................................13

*Gillette v. United States*,
401 U.S. 437 (1971)....................................................................................31

*Gragg v. Ky. Cabinet for Workforce Dev.*,
289 F.3d 958 (6th Cir. 2002) ......................................................................12

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
139 S. Ct. 524 (2020)....................................................................................3

*Hewitt v. Helms*,
482 U.S. 755 (1987)...............................................................................32, 33

*Jefferson Cnty. v. Smith*,
No. E2009-02674-COA-R3-CV, 2011 WL 3062010 (Tenn. Ct.
App. July 26, 2011)....................................................................................29

*Jones v. Bradley*,
590 F.2d 294 (9th Cir. 1979) ......................................................................27

*K.P. v. LeBlanc*,
   627 F.3d 115 (5th Cir. 2010) .........................................................................22

*Idaho v. Coeur d'Alene Tribe of Idaho*,
   521 U.S. 261 (1997).....................................................................................14

*Kaahumanu v. Hawaii*,
   682 F.3d 789 (9th Cir. 2012) .......................................................................30

*Kelly v. Lee*,
   No. 1:18-cv-00170-DCLC, 2020 WL 2120249 (E.D. Tenn. May 4,
   2020) .............................................................................................................19

*Kentucky v. Graham*,
   473 U.S. 159 (1985).....................................................................................13

*Kiser v. Reitz*,
   765 F.3d 601 (6th Cir. 2014) ...............................................................*passim*

*Larson v. Valente*,
   456 U.S. 228 (1982)................................................................................30, 31

*Libertarian Party of Ohio v. Wilhem*,
   988 F.3d 274 (6th Cir. 2021) .........................................................................4

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)................................................................................25, 26

*Nat'l Rifle Ass'n of Am. v. Magaw*,
   132 F.3d 272 (6th Cir. 1997) ..................................................................25, 26

*New Hampshire Right to Life Political Action Comm. v. Gardner*,
   99 F.3d 8, 15 (1st Cir, 1996)........................................................................23

*Newsome v. Batavia Local Sch. Dist.*,
   842 F.2d 920 (6th Cir. 1988) .........................................................................4

*O'Bryan v. Holy See*,
   556 F.3d 361 (6th Cir. 2009) .........................................................................3

*Okpalobi v. Foster*,
   244 F.3d 405 (5th Cir. 2001) .......................................................................17

*P. R. Aqueduct Sewer Auth. v. Metcalf & Eddy, Inc.*,
  506 U.S. 139 (1993) ....................................................................2

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) ...................................................13, 14, 15, 24

*Prairie Band Potawatomi Nation v. Wagnon*,
  476 F.3d 818 (10th Cir. 2007) ................................................17

*Rogers v. Stratton Indus., Inc.*,
  798 F.2d 913 (6th Cir. 1986) ............................................12, 13

*Rote v. Zel Custom Mfg. LLC*,
  816 F.3d 383 (6th Cir. 2016) ...................................................12

*Rubino v. City of New York*,
  480 N.Y.S.2d 971 (Sup. Ct. N.Y.C. 1984) ..............................27

*Russell v. Lundergan-Grimes*,
  784 F.3d 1037 (6th Cir. 2015) ...........................................*passim*

*Seminole Tribe of Fla. v. Florida*,
  517 U.S. 44 (1996) ....................................................................13

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ....................................................................35

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) .............................................................26, 28

*Thomas v. Union Carbide Agr. Prods. Co.*,
  473 U.S. 568 (1985) ..................................................................26

*Turi v. Main St. Adoption Servs., LLP*,
  633 F.3d 496 (6th Cir. 2011) .................................................3, 4

*Universal Life Church Monastery Storehouse v. Nabors*,
  No. 19-6217 (6th Cir. Aug. 3, 2020) ........................................9

*U.S. ex rel. Wall v. Circle C. Constr., LLC*,
  868 F.3d 466 (6th Cir. 2017) ...................................................12

*Varner v. Stovall*,
   500 F.3d 491 (6th Cir. 2007) ..............................................................30, 31

*Virginia Off. for Prot. & Advoc. v. Stewart*,
   563 U.S. 247 (2011)..................................................................................15

*Warth v. Seldin*,
   422 U.S. 490 (1975).................................................................................32

*Waste Mgmt. Holdings, Inc. v. Gilmore*,
   252 F.3d 316 (4th Cir. 2001) ..................................................................17

*Watkins v. Healy*,
   986 F.3d 648 (6th Cir. 2021) .....................................................................3

*Wayside Church v. Van Buren Cnty.*,
   847 F.3d 812 (6th Cir. 2017) ..............................................................12, 13

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989)..................................................................................13

**Statutes**

28 U.S.C. § 1291 .............................................................................................2

28 U.S.C. § 1331 .............................................................................................2

28 U.S.C. § 1343 .............................................................................................2

28 U.S.C. § 1367 .............................................................................................2

28 U.S.C. § 2201 .............................................................................................8

42 U.S.C. § 1983 .........................................................................................2, 7

42 U.S.C. § 1988 .............................................................................................2

Tenn. Code Ann. § 8-6-109 ..........................................................................18

Tenn. Code Ann. § 8-7-101 ..........................................................................14

Tenn. Code Ann. § 8-7-103 ..........................................................................18

Tenn. Code Ann. § 18-6-109 ..........................................................................7

Tenn. Code Ann. § 29-14-107 ...................................................................19

Tenn. Code Ann. § 36-3-101 .....................................................................7

Tenn. Code Ann. § 36-3-102 .....................................................................7

Tenn. Code Ann. § 36-3-103(a) ..............................................................6, 7

Tenn. Code Ann. § 36-3-103(c)(1) ............................................................7

Tenn. Code Ann. § 36-3-104(a)(1) ............................................................6

Tenn. Code Ann. § 36-3-105 .....................................................................7

Tenn. Code Ann. § 36-3-109 .....................................................................7

Tenn. Code Ann. § 36-3-301 .............................................................*passim*

Tenn. Code Ann. § 36-3-301(a) ...............................................................18

Tenn. Code Ann. § 36-3-301(a)(1) .......................................................6, 33

Tenn. Code Ann. § 36-3-301(a)(2) ....................................................*passim*

Tenn. Code Ann. § 36-3-303(a) ............................................................7, 29

Tenn. Code Ann. § 36-3-304 .....................................................................7

Tenn. Code Ann. § 39-16-504(a)(1) .........................................................29

Tenn. Code Ann. § 68-3-401 .....................................................................7

Tenn. Code Ann. § 68-3-401(c) .................................................................7

**Other Authorities**

1998 Tenn. Pub. Acts, ch. 745, § 2 .......................................................6, 34

2019 Tenn. Pub. Acts, ch. 415, § 3 ...........................................................6

Cathleen R. Smith, Tenn. Handbook Series: Crim. Offenses and Def.
    in Tenn.  § O30 (2018).....................................................................3

Tenn. Att'y. Gen. Op. 97-139 (Oct. 9, 1997) .........................................22

Tenn. Att'y. Gen. Op. U97-041 (Sept. 2, 1997) ........................................................33

Tenn. Const. art. VI, § 5..............................................................................14

## STATEMENT REGARDING ORAL ARGUMENT

Because of the importance of the issues presented for review, Defendants-Appellants request oral argument. This appeal involves issues of State sovereign immunity and the proper application of the exception to that immunity recognized in *Ex parte Young*, 209 U.S. 123 (1908). Defendants-Appellants further submit that oral argument in this matter will aid the decisional process.

## STATEMENT OF JURISDICTION

Plaintiffs asserted jurisdiction in the district court under 28 U.S.C. §§ 1331, 1343 and 1367, as well as 42 U.S.C. §§ 1983 and 1988. (Second Am. Compl., ¶¶ 19–21, R. 80, PageID# 479.) Defendants-Appellants (State Defendants) moved to dismiss on sovereign-immunity and justiciability grounds. (Mot. to Dismiss, R. 208, PageID# 2624–25.) The district court denied the motion in part, concluding that Plaintiffs' claims against all but one State Defendant fell within the *Ex parte Young* exception to the State's Eleventh Amendment sovereign immunity and that their claims were justiciable. (Mem. Op. R. 236, PageID# 3233, 3240–41.) State Defendants appealed the denial of their motion on both immunity and standing grounds. (Notice of Appeal, R. 239, PageID# 3253–54.)

This Court has jurisdiction over this interlocutory appeal under 28 U.S.C. § 1291 because a denial of immunity from suit is a final order subject to immediate appeal. *See P. R. Aqueduct Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). This Court may also exercise pendent appellate jurisdiction to review the standing issue. The "doctrine of pendent appellate jurisdiction allows an appellate court, in its discretion, to exercise jurisdiction over issues that are not independently appealable when those issues are 'inextricably intertwined' with matters over which the appellate court properly and independently has jurisdiction." *Chambers v. Ohio Dep't of Hum. Servs.*, 145 F.3d 793, 797 (6th Cir. 1998) (citation omitted). Pendent

appellate jurisdiction "may also be appropriate if review of the issue of which the court does not properly have jurisdiction is necessary to ensure meaningful review of the issue of which the Court does." *Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496, 503 (6th Cir. 2011) (citation and internal quotation marks omitted), *abrogated on other grounds by Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524 (2020).

The sovereign-immunity and standing issues are inextricably intertwined because this Court's ruling on State Defendants' sovereign immunity will "necessarily and unavoidably" decide the question of Plaintiffs' standing. *Watkins v. Healy*, 986 F.3d 648, 659 (6th Cir. 2021) (quoting *Brennan v. Twp. of Northville*, 78 F.3d 1152, 1157 (6th Cir. 1996)). Indeed, the inquiry necessary to determine whether the *Ex parte Young* exception applies is closely related to the standing inquiry. *See Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) (equating the *Ex parte Young* inquiry with the requirements for Article III standing); *Doe v. Holcomb*, 883 F.3d 971, 975 (7th Cir. 2018) (noting that "the requirements of *Ex parte Young* overlap significantly" with the standing inquiry). Given the "relatedness" of *Ex parte Young*'s enforcement requirement and the jurisdictional doctrine of standing, "judicial economy would counsel hearing these two issues together." *O'Bryan v. Holy See*, 556 F.3d 361, 377 n.7 (6th Cir. 2009).

Review of the standing issue is also "necessary to ensure meaningful review" of the *Ex parte Young* issue. *See Turi*, 633 F.3d at 503. This Court has consistently recognized that constitutional standing should be considered at all stages of litigation. *See, e.g.*, *Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 922 (6th Cir. 1988) (observing that "constitutional standing is always a 'threshold inquir[y] which [the] court is obligated to consider prior to asserting jurisdiction over [an] appeal'" (quoting *Allstate Ins. Co. v. Wayne Cnty.*, 760 F.2d 689, 691 (6th Cir. 1985))). This means that "when an appellant properly appeals another issue, the issue of standing comes before [the court] as well." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1419 (6th Cir. 1996) (Batchelder, J., concurring); *see also, e.g.*, *Libertarian Party of Ohio v. Wilhem*, 988 F.3d 274, 278 (6th Cir. 2021) (addressing the plaintiffs' standing even though it was "first raised on appeal" because it "implicate[d] [the Court's] subject-matter jurisdiction").

## INTRODUCTION

Plaintiffs here have challenged a Tennessee statute that places limits on who may solemnize marriages for secular, state-law purposes. The statute, though, contains no enforcement mechanism, provides for no penalties, and has never been enforced by any State official, let alone the State officials named as defendants here. Still, the district court denied State Defendants' motion to dismiss on Eleventh Amendment immunity and standing grounds, allowing Plaintiffs' claims to go forward.

## ISSUES PRESENTED FOR REVIEW

1. Whether the district court erred in permitting Plaintiffs' claims to proceed under the *Ex parte Young* exception to the State's sovereign immunity.

2. Whether the district court erred in ruling that Plaintiffs have Article III standing to pursue their claims.

## STATEMENT OF THE CASE

"The law of marriage in Tennessee is not controlled by rules of the common law, but is a matter of statute." *Bryant v. Townsend*, 221 S.W.2d 949, 950 (Tenn. 1949). Statutory requirements for marriage exist not only for the couple seeking to be married, but for wedding officiants as well. Indeed, since its founding, the State has limited the individuals authorized to solemnize the civil contract of marriage within the State. *See Bashaw v. State*, 9 Tenn. 177, 180–85 (1829).

These limits are currently found in Tenn. Code Ann. § 36-3-301, which authorizes "[a]ll regular ministers, preachers, pastors, priests, rabbis and other spiritual leaders of every religious belief, more than eighteen (18) years of age, having the care of souls," as well as numerous current and former public officials, to solemnize marriages in Tennessee. Tenn. Code Ann. § 36-3-301(a)(1).[1] The statute further provides that:

> In order to solemnize the rite of matrimony, any such minister, preacher, pastor, priest, rabbi or other spiritual leader must be ordained or otherwise designated in conformity with the customs of a church, temple or other religious group or organization; and such customs must provide for such ordination or designation by a considered, deliberate, and responsible act. Persons receiving online ordinations may not solemnize the rite of matrimony.

Tenn. Code Ann. § 36-3-301(a)(2).[2]

A couple wishing to be legally married in Tennessee must first obtain a marriage license from a county clerk directed to the officiant who is to solemnize the marriage. *See* Tenn. Code Ann. § 36-3-103(a). To do so, they must provide certain identifying information to the clerk. *Id.* § 36-3-104(a)(1). And so long as

---

[1] This statutory language can be traced back to a 1778 act that authorized "all regular ministers of the gospel of every denomination, having the care of souls, and all justices of the peace, to solemnize the rites of matrimony" in Tennessee. *Bashaw*, 9 Tenn. at 183.

[2] The first sentence of this subdivision was added to the statute in 1998, *see* 1998 Tenn. Pub. Acts, ch. 745, § 2, and the second in 2019, *see* 2019 Tenn. Pub. Acts, ch. 415, § 3.

the parties are of age, not of incestual relationship (as defined by statute), not intoxicated or mentally ill, and not already married, the clerk must issue the marriage license. *See id.* § 18-6-109; §§ 36-3-101, -102, -103(c)(1), -105, -109. The clerk has no authority to examine the qualifications of the officiant to whom the license is directed. *See id.* § 36-3-103(c)(1).

The license, once issued by a county clerk, remains valid for 30 days. *Id.* § 36-3-103(a). The officiant who performs the marriage ceremony must sign and date the license, *id.* § 36-3-304, and must return the license to the county clerk who issued it within three days of the ceremony, *id.* §§ 36-3-303(a), 68-3-401(c). After the signed license has been returned to the clerk, the clerk forwards the marriage certificate to the Tennessee Office of Vital Records. *Id.* § 36-3-103(c)(1). At that point, the Office of Vital Records registers the marriage certificate and records for purposes of state law that the individuals identified in the certificate are married. *Id.* § 68-3-401.

Plaintiffs, the Universal Life Church Monastery Storehouse (ULC)—a religious organization and non-profit corporation—and two individuals ordained as ministers by ULC, sued to challenge the constitutionality of Tenn. Code Ann. § 36-3-301(a)(2). (Second Am. Compl., ¶¶ 3, 4–8, 35, 40, 45, R. 80, PageID# 477–78, 482–84.)[3] They seek declaratory and injunctive relief under 42 U.S.C. § 1983 and

---

[3] The Second Amended Complaint also included a third ULC minister and a married couple. But the minister voluntarily dismissed his claims, (Mot. to Dismiss Party,

7

28 U.S.C. § 2201 against State Defendants—Tennessee's Governor and Attorney General, and four District Attorneys General—and four county clerks, all in their official capacities. (*Id.* at PageID# 477–78, 485–87.) Plaintiffs allege that 36-3-301(a)(2) "unconstitutionally grants a preference to certain religions," burdens their free exercise of religion, and violates their freedom of speech.[4] (*Id.*) Claiming violations of both the United States and Tennessee Constitutions, Plaintiffs seek an injunction "prohibiting Defendants from enforcing the ordination requirements" of § 36-3-301(a)(2) "to the extent those requirements prevent ULC Monastery ministers from solemnizing marriages in Tennessee or invalidate marriages solemnized by ULC Monastery ministers in Tennessee." (*Id.*, Prayer for Relief (b), (c), R. 80, PageID# 496.)

State Defendants moved to dismiss, asserting that Plaintiffs' claims were barred by sovereign immunity under the Eleventh Amendment and that Plaintiffs' claims were not justiciable. (Mot. to Dismiss, R. 208, Page ID# 2624–25; Mem. in

---

R. 218, PageID# 2925; Oct. 26 Order, R. 235, PageID# 3214), and the married couple's claims were dismissed as moot, (Mem. Op., R. 236, PageID# 3223–24; Dec. 22 Order, R. 237, PageID# 3248).

[4] ULC adheres to the principle that anyone who feels so called can become a minister. (Second Am., Compl., ¶26, R. 80, PageID# 480.) In accordance with that principle, ULC ordains minsters over the internet for free if they enter basic information and click an "ordain me" button on their website, and, for a fee, will also send credentials to ministers by mail. (*Id.*; TRO Appendix, Ex. G, R. 42-1; PageID# 269; Biser Dep. Excerpt, R. 116-2; PageID# 837.)

Supp. of Mot. to Dismiss, R. 209, PageID# 2633–50.)[5] The district court granted the motion in part.[6] (Mem. Op., R. 236, PageID# 3215.) While the district court concluded that the claims against Governor Lee were barred by Eleventh Amendment immunity, the court otherwise denied State Defendants' motion. (Mem. Op., R. 236, PageID# 3235–45.)

The district court first determined that Plaintiffs had standing. Even though no State Defendant ever enforced or threatened to enforce the challenged statute, and even though the statute does not proscribe any conduct, the court concluded that Plaintiffs had shown an injury-in-fact because the "existence of the statute" was injury enough. (*See id.* at PageID# 3225–28.) The court further concluded that this

---

[5] This was the second motion to dismiss State Defendants had filed. The first had been filed a year previously, but the district court refused to rule on the sovereign-immunity issue. (*See* Mot. to Dismiss, R. 115, PageID# 792–93; Oct. 23 Order, R. 140, PageID# 1271–72.) State Defendants appealed and this Court ultimately remanded the case and dismissed the appeal once the district court indicated that it would decide all questions of immunity before moving to the merits. *See* Order, *Universal Life Church Monastery Storehouse v. Nabors*, No. 19-6217 (6th Cir. Aug. 3, 2020). The original motion to dismiss was dismissed without prejudice and a new motion was filed. (*See* Aug. 18 Order, R. 204, PageID# 2590; Mot. to Dismiss, R. 208, PageID# 2624–25.)

[6] The county clerks (County Defendants) also moved to dismiss. (*See* Crowell Mot. to Dismiss, R. 206, PageID# 2594–95; Anderson Mot. to Dismiss, R. 210, PageID# 2729–30; Nabors Mot. to Dismiss, R. 212, PageID# 2818–19; Knowles Mot. to Dismiss, R. 215, PageID# 2851.) The district court's order ruled on these motions as well. (*See* Dec. 22 Order, R. 237, PageID# 3247–48.)

injury was traceable to State Defendants and redressable by a favorable decision. (*Id.* at PageID# 3233.)

The district court then determined that, other than Tennessee's Governor, the State Defendants were not entitled to sovereign immunity: the Attorney General because Tennessee law tasks him with defending the constitutionality of State statutes and because county clerks have relied on his opinions about ULC ministers; and the District Attorneys because they could theoretically bring charges against ULC ministers for solemnizing marriages under two other unchallenged statutes. (*Id.* at PageID# 3237–41.)

State Defendants appealed the denial of their motion to dismiss on both immunity and standing grounds. (Notice of Appeal, R. 239, PageID# 3253–54.) Plaintiffs subsequently cross-appealed. (Notice of Cross Appeal, R. 252, PageID# 3292–94.)[7]

## SUMMARY OF ARGUMENT

The district court erred in denying sovereign immunity to State Defendants. Plaintiffs' suit against State Defendants—the Tennessee Attorney General and four District Attorneys General—in their official capacities amounted to a suit against

---

[7] Plaintiffs cross-appealed only that part of the district court's order dismissing Governor Lee and only to the extent that this Court reverses the district court and concludes that no other defendant is a proper party. (*See* Notice of Cross Appeal, R. 252, PageID# 3293.)

the State.  While the district court applied the *Ex parte Young* exception to the State's sovereign immunity, that exception relies on the fiction that a state official enforcing an unconstitutional law is not acting on behalf of the State.  So it requires a "connection" between the named state official and the enforcement that allegedly harmed the plaintiff.  Plaintiffs cannot allege any such connection.

This Court has made clear that the required connection exists only when the named state official has authority to enforce and *has* enforced, or threatened to enforce, the allegedly unconstitutional law.  State Defendants have no authority to enforce the challenged law; nor have they attempted or threatened to enforce it against Plaintiffs.  The law Plaintiffs challenge relates only to the secular, state-law status of a domestic relationship between two private individuals.  State Defendants, in other words, are defendants here only because they are State officials, not because they have enforced or threatened to enforce an allegedly unconstitutional law.  It follows that the *Ex parte Young* exception does not apply.

The district court also erred in concluding that Plaintiffs have standing to pursue their claims.  The same lack of enforcement that renders *Ex parte Young* inapplicable also deprives Plaintiffs of standing.  Plaintiffs allege no ongoing or threatened enforcement.  Consequently, they have not alleged any Article III injury that would be redressed by the injunctive relief they seek.

## STANDARD OF REVIEW

A district court's denial of a motion to dismiss on Eleventh Amendment sovereign-immunity grounds is subject to de novo review. *Franks v. Kentucky Sch. for the Deaf*, 142 F.3d 360, 362 (6th Cir. 1998). Plaintiffs bear "the burden of proving jurisdiction in order to survive [a] motion" to dismiss. *Wayside Church v. Van Buren Cnty.*, 847 F.3d 812, 817 (6th Cir. 2017) (quoting *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)). "[T]he entity asserting Eleventh Amendment immunity," on the other hand, "has the burden to show that it is entitled to immunity, *i.e.*, that it is an arm of the state." *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002). But once an official or entity has demonstrated that it falls within the scope of the State's sovereign immunity, the traditional rule applies that the plaintiff bears the burden of proving that subject-matter jurisdiction exists under an exception to that immunity, like *Ex parte Young*. *See Wayside Church*, 847 F.3d at 817; *cf. U.S. ex rel. Wall v. Circle C. Constr., LLC*, 868 F.3d 466, 471 (6th Cir. 2017) ("[T]he burden of proving an exception rests with the party invoking it.").

A district court's denial of a motion to dismiss for lack of subject-matter jurisdiction is similarly subject to de novo review. *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016). When a defendant has raised a "facial attack on the subject-matter jurisdiction," this Court must "'take[] the allegations in the

complaint as true,' just as in a Rule 12(b)(6) motion." *Wayside Church*, 847 F.3d at 816 (quoting *Gentek Bldg. Prods., Inc. v. Sherwin-Williams, Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). The "burden of proving jurisdiction," though, remains with the plaintiff. *Id.* at 817 (quoting *Rogers*, 798 F.2d at 915).

## ARGUMENT

### I. Plaintiffs' Claims Are Barred by the State's Sovereign Immunity.

Each "State is a sovereign entity in our federal system." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). A "fundamental aspect" of that sovereignty is immunity from suit. *Alden v. Maine*, 527 U.S. 706, 713 (1999). The Eleventh Amendment itself "confirms" that a State is not "amenable to the suit of an individual without its consent." *Seminole Tribe*, 517 U.S. at 54 (quoting *Hans v. Louisiana*, 134 U.S. 1, 11 (1890)). And a "'suit against a state official in his or her official capacity is not a suit against the official,'" *see Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); it "is a suit against the State itself," *id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). That is true "regardless of whether [the suit] seeks damages or injunctive relief." *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 444–45 (6th Cir. 2019) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984)).

Here, each of the State Defendants is a State official.  *See* Tenn. Const. art. VI, § 5 (Attorney General and district attorneys general); Tenn. Code Ann. § 8-7-101, *et seq.* (district attorneys general).  And each State Defendant has been sued in his or her official capacity.  (*See* Second Am. Compl., ¶¶ 13–18, R. 80, PageID# 477–78.)  So this action "is a suit against the State itself," *Russell*, 784 F.3d at 1046, which means that the Eleventh Amendment is a "true jurisdictional bar" to the suit unless an exception applies, *id.*

### A. The *Ex parte Young* exception applies when a State official enforces or has threatened to enforce an allegedly unconstitutional law.

The Supreme Court established an exception to a State's Eleventh Amendment sovereign immunity in *Ex parte Young*, 209 U.S. 123 (1908).  There, the Court held that the plaintiffs could seek an injunction in federal court against a state official to prohibit him from enforcing an allegedly unconstitutional state law. *Id.* at 159–68.  This exception to State sovereign immunity rests on the "fiction," *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997), that "a suit challenging the constitutionality of a state official's action is not one against the State." *Pennhurst*, 465 U.S. at 102.

The *Ex parte Young* exception, though, does not "permit a federal-court action to proceed in every case where prospective declaratory and injunctive relief is sought" against a state official. *Coeur d'Alene Tribe of Idaho*, 521 U.S. at 270.  Such an interpretation "would be to adhere to an empty formalism" and would

"undermine" the purpose of the Eleventh Amendment. *Id.*; *see also Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 268 (2011) (Roberts, C.J., dissenting) (observing that while the Court has "consistently acknowledged the important role *Ex parte Young* plays in 'promot[ing] the vindication of federal rights,'" it has also been "cautious not to give that decision 'an expansive interpretation'" (quoting *Pennhurst*, 465 U.S. at 105, 102)). Instead, the *Ex parte Young* exception permits suits to proceed only where the state official has "some connection with the enforcement of the [allegedly unconstitutional statute]." *Ex parte Young*, 209 U.S. at 157. That connection "is the important and material fact" that allows the claim to proceed. *Id.*

Because a state official's connection with enforcement is essential, this Court has consistently held that "[g]eneral authority to enforce the laws of the state is not enough to make government officials the proper parties to litigation challenging the law." *Children's Healthcare Is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996) (quoting *1st Westco Corp. v. Sch. Dist. Of Phila.*, 6 F.3d 108, 113 (3d Cir. 1993)). In *Children's Healthcare*, this Court held that the plaintiffs' suit against the attorney general of Ohio was barred by the Eleventh Amendment because the plaintiffs were "not complaining of any action by" the attorney general. *Id.* at 1416. The attorney general "[had] not threaten[ed] to commence and was not about to commence proceedings against the plaintiffs, much less proceedings to enforce

15

an allegedly unconstitutional act." *Id.* (footnotes omitted). And for that reason, this Court held that *Ex parte Young* did not apply. *Id.*

This Court reaffirmed in *Russell*, that *Ex parte Young* applies only when there is a realistic threat of adverse action by the state defendant. *See* 784 F.3d at 1046–48. Although this Court held in *Russell* that *Ex parte Young* applied to an action against Kentucky's attorney general, it did so because the Kentucky Attorney General's Office had jurisdiction to investigate and prosecute violations of the challenged Kentucky election laws, had "repeatedly fielded and investigated complaints of impermissible electioneering," and had "promised the public that it would pursue possible criminal sanctions." *Id.* at 1047. The Attorney General's threat of prosecution, this Court reasoned, was enough to satisfy the requirement of *Ex parte Young* that the state official enforce or threaten enforcement of the challenged act. *Id.* This Court similarly concluded that *Ex parte Young* permitted an action against the Kentucky Secretary of State and the State Board of Elections, because it found "a realistic possibility" that they would "take legal or administrative actions against the plaintiff's interests." *Id.* at 1047–49.

And just two years ago, this Court reiterated that the "exception to sovereign immunity created in *Ex parte Young* has been read narrowly." *EMW Women's Surgical Ctr.*, 920 F.3d at 445 (citing *Children's Healthcare*, 92 F.3d at 1415). It permits suits for prospective injunctive relief against "State officials who are

'clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings . . . to enforce against parties affected an unconstitutional act, violating the Federal Constitution.'" *Id.* (quoting *Ex parte Young*, 209 U.S. at 156). The exception does *not* apply, this Court observed, "'when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute.'" *Id.* "General enforcement authority is insufficient." *Id.* For the exception to apply, "[t]here must be 'a realistic possibility the official will take legal or administrative actions against the plaintiff's interests.'" *Id.* (quoting *Russell*, 784 F.3d at 1048).[8]

## B.     The *Ex parte Young* exception does not apply here.

The district court wrongly concluded that the *Ex parte Young* exception applied to Plaintiffs' claims. (*See* Mem. Op., R. 236, PageID# 3237–41.) As discussed above, the exception exists only to allow a federal court to issue "an injunction which restrains the state officer from taking any steps towards the

---

[8] This "requirement that there be some actual or threatened enforcement" has been "repeatedly applied by the federal courts" to dismiss suits against governors, attorneys general, and other state officials. *Okpalobi v. Foster*, 244 F.3d 405, 415–16 (5th Cir. 2001) (collecting cases). This is because "[t]he purpose of allowing suit against state officials to enjoin their enforcement of an unconstitutional statute is not aided by enjoining the actions of a state official not directly involved in enforcing the subject statute." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001); *see also Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007) ("[S]tate officials must have a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty.").

enforcement of an unconstitutional enactment, to the injury of complainant." *Ex parte Young*, 209 U.S. at 159. No such injunction is possible here, though, because none of the State Defendants has taken—or even has authority to take—any "steps toward enforcement" of the challenged law. Indeed, Plaintiffs have not alleged that any State Defendant commenced or threatened to commence proceedings against them or took any other action that would constitute enforcement of the challenged laws. Nor could they. Tenn. Code Ann. § 36-3-301(a) has no enforcement mechanism; it addresses only the secular status of a private domestic relationship and arises only in disputes between those private parties.

### 1. The Tennessee Attorney General has no enforcement role.

The Tennessee Attorney General has no role in enforcing, regulating, or otherwise executing the provisions of § 36-3-301. Nor does the Attorney General have any authority to initiate criminal prosecutions. *See* Tenn. Code Ann. §§ 8-6-109, 8-7-103. This lack of connection between the Attorney General and enforcement of the challenged statute mandates dismissal on sovereign-immunity grounds. *See EMW Women's Surgical Ctr.*, 920 F.3d at 446; *Children's Healthcare*, 92 F.3d at 1416–17. The district court cited two reasons for denying sovereign immunity, but neither supports the court's decision.

*First*, the district court noted that "where parties challenge the constitutionality of any Tennessee statute, Tennessee law requires the Attorney

General to be a party defendant in any such proceeding where the constitutionality of the Act of the legislature is before the Court on declaratory judgments proceeding." (Mem. Op., R. 236, PageID# 3238 (quoting *Kelly v. Lee*, No. 1:18-cv-00170-DCLC, 2020 WL 2120249, at *3 (E.D. Tenn. May 4, 2020)).) The court also pointed to Tenn. Code Ann. § 29-14-107, which provides "that '[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration,' and that if a challenged statute 'is of statewide effect and is alleged to be unconstitutional, the attorney general and reporter shall also be served with a copy of the proceeding and be entitled to be heard.'" (*Id.*)

But these authorities support only the proposition that the Attorney General should receive notice and is "entitled to be heard" when the constitutionality of a State law is challenged. Neither supports the conclusion that the Attorney General's Eleventh Amendment sovereign immunity has been waived.[9] As this Court has

---

[9] *Kelly*, which the district court cited, relied in turn on Tenn. Code Ann. § 29-14-107, as well as two other district-court decisions that do not support the conclusion that the *Ex parte Young* exception is properly applied to the Tennessee Attorney General. *See Kelly*, 2020 WL 2120249, at *3 (citing *Burns v. Helper*, No. 3:18-CV-01231, 2019 WL 5987707, at *5 n.2 (M.D. Tenn. Oct. 24, 2019), *report and recommendation adopted*, No. 3:18-CV-01231, 2019 WL 5964546 (M.D. Tenn. Nov. 13, 2019); and *Bd. of Educ. of Shelby Cnty. v. Memphis City Bd. of Educ.*, No. 2:11-CV-02101-SHM, 2012 WL 6003540, at *2 (W.D. Tenn. Nov. 30, 2012), *supplemented*, No. 2:11-CV-02101-SHM, 2012 WL 6607288 (W.D. Tenn. Dec. 18, 2012)).

recognized, the *Ex parte Young* exception "does not reach state officials who lack a 'special relation to the particular statute' and '[are] not expressly directed to see to its enforcement.'" *Russell*, 784 F.3d at 1047 (alterations in original) (quoting *Ex parte Young*, 209 U.S. at 157).

A State statute allowing for the Attorney General's participation in suits challenging the constitutionality of State laws does not provide this required "special relation." And the authorities on which the district court relied are a far cry from the sort of connection to enforcement this Court has found sufficient for application of *Ex parte Young*. *Compare Russell*, 784 F.3d at 1046–47 (finding a sufficient connection to enforcement where the Kentucky Attorney General had jurisdiction to investigate and prosecute violations of the challenged law and had "promised the public that it would pursue possible criminal sanctions") *with EMW Women's Surgical Ctr.*, 920 F.3d at 445–46 (declining to find that Kentucky's Attorney General had a sufficient connection to enforcement by virtue of his status as "chief law officer" and his discretionary authority to "defend a statute's constitutional

---

In *Burns*, the court declined to dismiss the Attorney General on immunity grounds because it found that he had waived the argument by not challenging the court's prior ruling that Tennessee law requires him to be a party in declaratory judgment proceedings involving the constitutionality of a State law. *See* 2019 WL 5987707, at *5 & n.2. And in *Board of Education of Shelby County*, the court did not even consider whether *Ex parte Young* applied—it only concluded that the Attorney General is an "appropriate named party" in a constitutional challenge. *See* 2012 WL 6003540, at *2.

validity"). If entitlement to defend the constitutionality of State statutes were enough to satisfy *Ex parte Young*'s connection-to-enforcement requirement, "then the constitutionality of every act passed by the legislature could be tested by a suit against the . . . attorney general." *Ex parte Young*, 209 U.S. at 157. But as the Supreme Court has recognized, that would be inconsistent "with the fundamental principle that [States] cannot, without their assent, be brought into any court at the suit of private persons." *Id.*

*Second*, the district court observed that Plaintiffs had alleged a connection between the Attorney General and the treatment of ULC ministers. Specifically, the court noted that the Attorney General's Office has issued several opinions confirming that State law bars ULC ministers from civilly solemnizing marriages. (Mem. Op. R. 236, PageID# 3238–39.) The court acknowledged that the Attorney General's ability to issue opinions does not "necessarily" make him a "proper defendant to a suit raising a constitutional challenge to a law." (*Id.* at PageID# 3239.) Still, the court went on to conclude that Plaintiffs' allegations that some county clerks in Tennessee have relied on the Attorney General's opinions in refusing to issue marriage licenses to ULC ministers and have advised ministers that they lack authority to perform weddings were "enough to show that the Attorney General has some connection with the enforcement of the act." (*Id.* at PageID# 3239–40.)

21

But Plaintiffs have not asserted that the Attorney General *directed* county clerks to deny marriage licenses to ULC ministers. Indeed, the reality is just the opposite: The Attorney General has opined that county clerks lack "the authority to examine the qualifications of a person seeking to solemnize a marriage" and that the "duty of the county clerk to record marriage licenses upon certification by the officiant [is] a ministerial duty." Tenn. Att'y. Gen. Op. 97-139, 1997 WL 654324, at *1 (Oct. 9, 1997).[10]

The allegation that county clerks—individuals that the Attorney General does not supervise or control—merely relied on (non-binding) Attorney General Opinions to deny marriage licenses is not a sufficient "connection with the enforcement" of the challenged statute. *Ex parte Young*, 209 U.S. at 157; *see K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (noting that "'enforcement' typically involves compulsion or constraint" and holding that a state actor "must be connected with" that type of "enforcement" for *Ex parte Young* to apply). If it were, the *Ex parte Young* exception would permit suits against the Attorney General in virtually any instance where a party purportedly relied on his opinions, even if that reliance was misplaced. Put simply, the Attorney General is not "connect[ed] with the

---

[10] State Defendants cited this opinion three times in support of their motion to dismiss, each time pointing out that county clerks lack the authority to deny marriage licenses based on the officiant's qualifications. (*See* Mem. in Supp. of Mot. to Dismiss, R. 209, PageID# 2632, 2640 n. 3; Reply in Supp. of Mot. to Dismiss, R. 226, PageID# 3098 n. 2).

22

enforcement" of Tenn. Code Ann. § 36-3-301. *Ex parte Young*, 209 U.S. at 157. The exception therefore does not apply to Plaintiffs' claims against the Attorney General.

### 2. The District Attorneys General have no enforcement role.

The remaining State Defendants, four District Attorneys General, likewise fall outside the *Ex parte Young* exception. The district court's analysis for concluding that the exception applied to Plaintiffs' claims against them was flawed.

The district court highlighted the absence of any "clear[,] specific[,] affirmative statements that the [statute] will not be enforced." (Mem. Op., R. 236, PageID# 3240.) The court further observed that "courts 'assume a credible threat of prosecution in the absence of compelling contrary evidence,'" (*Id.* at PageID# 3240–41 (quoting *New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996))), because "the Supreme Court has instructed them that a threat of prosecution is credible when a plaintiff's intended conduct runs afoul of a criminal statute and the Government fails to indicate affirmatively that it will *not* enforce the statute, (*id.* at PageID# 3241 (quoting *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 687 (7th Cir. 1998))).

But the statute Plaintiffs challenge here, Tenn. Code Ann. § 36-3-301, is not a criminal statute. It contains no enforcement mechanism at all. So Plaintiffs' intended conduct does not "run[] afoul of a criminal statute." And even if the district

court were right in finding it important that "the District Attorneys are prosecutors who could decide to enforce the law," (Mem. Op., R. 236, PageID# 3241), § 36-3-301 is not a law for them to enforce.[11]  Moreover, this interpretation of *Ex parte Young*—where general law-enforcement authority is enough to overcome the State's sovereign immunity—cannot be squared with this Court's repeated recognition that a theoretical possibility of enforcement is not enough.  Plaintiffs, this Court has said, must show that enforcement is both a "realistic possibility," *Russell*, 784 F.3d at 1048, and "likely," *Doe v. DeWine*, 910 F.3d 842, 848 (6th Cir. 2018).  Because Plaintiffs cannot make that showing, *Ex parte Young* also does not apply to Plaintiffs' claims against the District Attorneys General.

*   *   *

At bottom, *Ex parte Young* "abrogates a state official's Eleventh Amendment immunity when a suit challenges the constitutionality of a state official's action." *Children's Healthcare*, 92 F.3d at 1415 (citing *Pennhurst*, 465 U.S. at 102).  Without this *action* requirement, the constitutionality of any State law could be tested by suits against the governor and the attorney general.  *See Ex parte Young*, 209 U.S. at 157.  No matter how "convenient" that might be, it is not the law.  *See id.*  The State

---

[11] In the context of its ruling on standing, the district court identified two other statutes that the District Attorneys General could use to prosecute ULC ministers. (Mem. Op., R. 236, PageID# 3226–27.)  But as discussed below, Plaintiffs intended conduct does not run afoul of these statutes either.

24

official named as a defendant "must have some connection with the enforcement" of the challenged law because any other approach would "merely mak[e] . . . the state a party." *See id.* Here, neither the Attorney General nor the named District Attorneys have any "connection with the enforcement" of the challenged law, so the *Ex parte Young* exception does not apply. The district court's conclusion to the contrary wrongly "extend[s] *Young* beyond what the Supreme Court has intended and held." *Children's Healthcare*, 92 F.3d at 1416.

## II. Plaintiffs Lack Standing to Pursue their Claims.

Article III of the U.S. Constitution limits the jurisdiction of federal courts to cases and controversies, and a series of "justiciability doctrines" enforce that limitation. *See Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). "Perhaps the most important" of these doctrines is standing, *id.*, which requires the plaintiff to demonstrate three elements: "(1) that he has suffered an 'injury in fact,' (2) that there is 'a causal connection between the injury and the conduct complained of,' and (3) that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision,'" *Kiser v. Reitz*, 765 F.3d 601, 607 (6th Cir. 2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Each of these elements is an "irreducible constitutional minimum." *Lujan*, 504 U.S. at 560.

For many of the same reasons that *Ex parte Young* does not apply, Plaintiffs cannot meet their burden to establish Article III standing. Indeed, the same lack of

enforcement that renders *Ex parte Young* inapplicable means that Plaintiffs cannot show an injury-in-fact or that their requested relief would redress their alleged injuries.[12] The district court erred in ruling otherwise. (Mem. Op., R. 236, PageID# 3233.)

### A. Plaintiffs cannot show an injury-in-fact.

Plaintiffs cannot satisfy the first standing requirement: an injury-in-fact. A plaintiff suffers an injury-in-fact "when his legally protected interest has been invaded and the injury is both concrete and particularized and actual or imminent, not conjectural or hypothetical." *Kiser*, 765 F.3d at 607 (quoting *Lujan*, 504 U.S. at 560) (internal quotation marks omitted). And while "most federal claims assert allegations that the plaintiff has suffered a past injury," allegations of future injuries may suffice for standing purposes so long as "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Id.* at 607–08 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal

---

[12] For much the same reason, this case is not ripe for adjudication. So the district court, and thus this Court, lacks jurisdiction on ripeness grounds as well. The basic rationale of the ripeness doctrine "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Magaw*, 132 F.3d at 284. An issue is not fit for judicial decision where it "involve[s] contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580–81 (1985). Any alleged injury to Plaintiffs here depends on enforcement—a "contingent future event" that history tells us will never occur at all. Nor will Plaintiffs suffer any hardship from withholding court consideration at this time. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967).

quotation marks omitted).  To make this showing, a plaintiff must demonstrate "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of prosecution thereunder."  *Id.* at 608 (quoting *Babbit v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).  Plaintiffs cannot make this demonstration.

*First*, Plaintiffs cannot establish an intention to "engage in a course of conduct arguably affected with a constitutional interest but proscribed by a statute."  *Id.*  The challenged provision, Tenn. Code Ann. § 36-3-301(a)(2), identifies those persons authorized by the State to solemnize marriages and does not "proscribe[]" any conduct at all.  Moreover, the conduct in which Plaintiffs wish to engage— solemnizing marriages for *civil* purposes—is not "affected with a constitutional interest."  There is no recognized constitutional right to solemnize a marriage for purposes of secular state law.  *See, e.g.*, *Jones v. Bradley*, 590 F.2d 294, 296 (9th Cir. 1979) (finding "no support for th[e] proposition" that "a pastor of the ULC" has "a First Amendment free exercise right to perform marriages"); *Rubino v. City of New York*, 480 N.Y.S.2d 971, 937 (Sup. Ct. N.Y.C. 1984) (concluding that a ULC minister had "no recognized First Amendment free exercise right to perform marriage").

Plaintiffs, then, suffer no cognizable injury from the fact that ULC ministers lack authority to solemnize marriages for secular, state-law purposes.  They remain

free to conduct whatever *religious* ceremonies they wish. And because ministers and their organizations have no protected interest in the secular status of a couple under State law, a religious officiant suffers no injury if a couple decides to have a religious ceremony and then goes to a public official for secular recognition. ULC itself has advised its ministers that such a procedure does not impair their religious practice. (Initial Disclosures Ex., R. 116-7, PageID# 816.)

*Second*, Plaintiffs cannot meet their burden to show there is a "credible threat" of prosecution or enforcement sufficient to confer Article III standing. *See Kiser*, 765 F.3d at 608. Plaintiffs have alleged—and the district court concluded—that "[m]inisters who violate [the statute] face the threat of criminal liability." (Second Am. Compl., ¶ 31, R. 80, PageID# 481–82; *see* Mem. Op., R. 236, PageID# 3226–28, 3240–41.) But Plaintiffs have cited no law or practice in support of that allegation, let alone the sort of law or practice that would be sufficient to show an injury-in-fact. *Cf., e.g.*, *SBA List*, 573 U.S. at 164 (finding the "threat of future enforcement . . . substantial" because "[m]ost obviously, there is a history of past enforcement here"); *Russell*, 784 F.3d at 1049 (relying on the "Defendants' historical conduct" to find a credible threat of prosecution). Indeed, Plaintiffs have stated definitively that they have *not* been threatened with prosecution. (Biser Dep. Excerpt, R. 116-2, PageID# 844; Patterson Dep. Excerpt, R. 116-3, PageID# 860.)

That makes sense, of course, because as discussed above, Tenn. Code Ann. § 36-3-301 is not a criminal statute.  And while the district court identified two other statutes that *are* criminal statutes (Mem. Op., R. 236, PageID# 3226–27), Plaintiffs' intended conduct would not run afoul of either.

The first statute, Tenn. Code Ann. § 36-3-303(a), criminalizes only the officiant's failure to return the completed marriage license within three days.  It has nothing to do with the minister's authority to solemnize the marriage.  What is more, the statute applies only to officiants "authorized by § 36-3-301."  *See* Tenn. Code Ann. § 36-3-303(a).  Since § 36-3-301 does not authorize ULC ministers to solemnize marriages at all, there is no possibility that § 36-3-303(a) could be used to prosecute ULC ministers simply because they solemnized a marriage.

The second statute, Tenn. Code Ann. § 39-16-504(a)(1), is similarly inapplicable.  That provision makes it a misdemeanor to "[k]nowingly make a false entry in, or false alteration of, a governmental record" and is designed to prevent obstruction of justice and tampering with governmental records.  *See* Cathleen R. Smith, Tenn. Handbook Series: Crim. Offenses and Def. in Tenn. § O30 (2018).  A marriage certificate is no doubt a governmental record.  *See Jefferson Cnty. v. Smith*, No. E2009-02674-COA-R3-CV, 2011 WL 3062010, at *10 (Tenn. Ct. App. July 26, 2011).  But Plaintiffs have not shown that this tampering provision could—or ever would—be applied to a minister who signs her real name and enters an accurate date.

29

The district court found it "unnecessary to delve too deeply into these arguments" because of "the claims presented and the nature of the relief sought." (Mem. Op., R. 236, PageID# 3227.) In the district court's view, Plaintiffs allege that they "are treated differently than others in violation of the First Amendment, and more specifically that they are being subjected to religious discrimination because they are prohibited from performing marriage ceremonies that other ministers of more traditional religions are authorized to perform." (*Id.* at PageID# 3225.) These allegations, the court concluded, were sufficient to show an injury-in-fact. (*Id.* at PageID# 3230.)

To support that conclusion, the district court relied on two propositions: first, that wedding ceremonies are protected expression under the First Amendment, (*id.* at PageID# 3225 (quoting *Kaahumanu v. Hawaii*, 682 F.3d 789, 799 (9th Cir. 2012)); and second, that the clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another, (*id.* (quoting *Larson v. Valente*, 456 U.S. 228, 244 (1982)).

But the first proposition is irrelevant because Plaintiffs are not prohibited from performing wedding ceremonies—only from civilly solemnizing marriages. And the second proposition, though true, is oversimplified. While the State cannot expressly discriminate against a particular religious denomination, it can enact neutral laws that affect denominations differently. *See Varner v. Stovall*, 500 F.3d

491, 495 (6th Cir. 2007) (rejecting the argument that a state-law clergy-penitent privilege "discriminate[d] among religions" because it excluded from the privilege's benefit certain religious groups as a result of their beliefs and practices and concluding that the challenged law did not facially discriminate among religions).[13]

Ultimately, then, Plaintiffs bring this pre-enforcement challenge and seek relief based entirely on their perception of the law as discriminatory. But that is not enough to establish standing. The challenged provision does not touch on any activity "affected with a constitutional interest." *Kiser*, 765 F.3d at 608. Not only that, but binding precedent requires a credible threat of prosecution—or at least some threat of enforcement or other injury to establish standing. *See, e.g.*, *Babbitt*, 442 U.S. at 298–99. No such threat exists here.

---

[13] Notably, this Court in *Varner* rejected the plaintiff's analogy to *Larson*—the same case on which the district court relied here. In distinguishing *Larson*, this Court reasoned that the state-law privilege at issue did not "'focus[] precisely and solely upon religious organizations,'" but only limited the "manner in which an individual of any religious denomination may seek spiritual guidance and maintain the confidentiality of information." *Varner*, 500 F.3d at 499 (quoting *Larson*, 456 U.S. at 246 n.23). This Court found the better analogy to be to *Gillette v. United States*, 401 U.S. 437 (1971), in which the Supreme Court upheld a law that "did not discriminate *between religious denominations* because it permissibly 'focused on *individual conscientious belief, not sectarian affiliation*.'" *Id.* (emphasis added) (quoting *Gillette*, 401 U.S. at 441). The provisions challenged here, like those in *Varner* and *Gillette*, do not focus solely—or even at all—on religious organizations or sectarian affiliation. Instead, they permissibly focus on individuals and the "manner in which an individual of any religious denomination" may become authorized to solemnize marriages for purposes of secular state law. *See id.*

**B.      Plaintiffs' requested relief would not redress their alleged injuries.**

Plaintiffs have also failed to satisfy the third standing requirement: redressability.  An injury is redressable if "a judicial decree can provide 'prospective relief' that will 'remove the harm.'"  *Doe v. DeWine*, 910 F.3d 842, 850 (6th Cir. 2018) (quoting *Warth v. Seldin*, 422 U.S. 490, 505 (1975)).  "[T]he judicial decree," then, "is not the end but the means."  *Hewitt v. Helms*, 482 U.S. 755, 761 (1987).  Put just a bit differently, "[r]edress is sought *through* the court, but *from* the defendant."  *Id.* (emphasis in original).  The "real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*."  *Id.* (emphasis in original).  No "judicial pronouncement" can have that effect here.

Plaintiffs asked the district court to "prohibit[] Defendants from enforcing the ordination requirements" of § 36-3-301(a)(2).  (Second Am. Compl., Prayer for Relief (b), R. 80, PageID# 496.)  But they never explained what that injunction would actually do or what "enforcement" they seek to prohibit.  Nor could they. Again, the statute concerns only the state-law status of a private domestic relationship; there is no "enforcement" at all.  This means that no "judicial pronouncement" can "affect[] the behavior of the defendant towards the plaintiff."

*Hewitt*, 482 U.S. at 761. And it follows that Plaintiffs cannot satisfy the redressability prong of the standing analysis.

Even if this Court were to accept the district court's conclusion that Plaintiffs have an injury-in-fact based on subjective feelings of discrimination, the relief they seek would not redress that injury either.

Plaintiffs aim to enjoin two provisions of § 36-3-301(a)(2): first, the provision that a minister or spiritual leader must be ordained pursuant to a "considered, deliberate, and responsible" act in order to solemnize marriages; and second, the provision that "[p]ersons receiving online ordinations may not solemnize the right of matrimony." (Second Am. Compl., Prayer for Relief (a), R. 80, PageID# 495–96.) Plaintiffs, though, have not challenged § 36-3-301(a)(1); nor did they ask the court for any relief relating to it. But that provision also bars Plaintiffs from solemnizing marriages.

Subdivision (a)(1) provides that all "regular" ministers and other spiritual leaders of every religious belief "having the care of souls" may solemnize a marriage. Tenn. Code Ann. § 36-3-301(a)(1). In 1997, the Tennessee Attorney General opined that an individual who had been ordained by the Universal Life Church by mail order was not authorized to solemnize marriages under the language of what is now Subdivision (a)(1). *See* Tenn. Att'y Gen. Op. U97-041, 1997 WL 654324, at *3–6 (Sept. 2, 1997). The opinion examined court decisions, including

33

decisions interpreting other state's marriage laws and the military exemption for ministers and religious leaders, and concluded that an individual who received his ordination by mail order—unaccompanied by any of the typical indicia that a religious organization had purposefully selected the individual to act as a spiritual leader—did not qualify as a "regular" minister or spiritual leader "having the care of souls." *Id.*

The Tennessee legislature later amended § 36-3-301 to include the "considered, deliberate, and responsible" act requirement, which reflected the analysis in the Attorney General's opinion. *See* 1998 Tenn. Pub. Acts, ch. 745, § 2. But that amendment did not eliminate or otherwise alter the requirements of Subdivision (a)(1) that an individual be a "regular" minister who has the "care of souls."

Plaintiff ministers do not meet the requirements of Subdivision (a)(1). Plaintiffs' ordinations consist of little more than the click of a mouse, and they sought ordination only to have authority to solemnize marriages *civilly*, not spiritually. (Biser Dep. Excerpt, R. 116-2, PageID# 836–39, 841–43; Patterson Dep. Excerpt, R. 116-3, PageID# 853–54, 856–57, 862–67.) More is necessary to meet the statutory requirements that an officiant be a "regular" minister or spiritual leader who has the "care of souls." Granting Plaintiffs the relief they seek, then, would not

alter their status under State law and would not redress their alleged feelings of discrimination.

The district court did not engage with this argument at all. Instead, the court characterized it as a "merits argument" and declined to consider it under the order-of-decision doctrine. (Mem. Op., R. 236, PageID# 3225–26, 3233.) But this is quintessentially a redressability argument. Plaintiffs have alleged harms—the inability to civilly solemnize marriages and feelings of discrimination—that can be traced to multiple statutory provisions, one of which has not been challenged. This means that even a favorable ruling for Plaintiffs on the provisions they did challenge would not redress their alleged harm; they would still lack authority to civilly solemnize marriages and would still presumably suffer the same feelings of discrimination. And "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998).

## CONCLUSION

For the reasons stated, that part of the district court's order denying State Defendants' motion to dismiss on immunity and standing grounds should be reversed.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

ANDRÉE S. BLUMSTEIN
Solicitor General

LESLIE A. BRIDGES
Senior Deputy of Public
Protection Section and Counsel
to the Attorney General

STEVEN A. HART
Special Counsel

/s/ Matthew D. Cloutier
MATTHEW D. CLOUTIER
Assistant Attorney General

P.O. Box 20207
Nashville, TN 37202
(615) 741-7908
Matt.Cloutier@ag.tn.gov

*Counsel for Defendants-Appellants*

April 19, 2021

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because it contains 8,401 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5)–(6) because it has been prepared in proportionally spaced typeface using Times New Roman 14-point font.

/s/ Matthew D. Cloutier
MATTHEW D. CLOUTIER
Assistant Attorney General

April 19, 2021

## CERTIFICATE OF SERVICE

I, Matthew D. Cloutier, counsel for Defendant-Appellants and a member of the Bar of this Court, certify that, on April 19, 2021, a copy of the Brief of Defendants-Appellants was filed electronically through the appellate CM/ECF system. I further certify that all parties required to be served have been served.

/s/ Matthew D. Cloutier
MATTHEW D. CLOUTIER
Assistant Attorney General

# DESIGNATION OF COURT DOCUMENTS

*Universal Life Church Monastery Storehouse, et al. v. Nabors, et al.*,
No. 2:19-cv-00049 (M.D. Tenn.)

| Docket Entry No. | Description | Page ID # |
|---|---|---|
| 1 | Complaint | 1–19 |
| 11 | Plaintiffs' Motion for Temporary Restraining Order and for an Emergency Hearing | 47–49 |
| 18 | Order Granting Plaintiffs' Motion for an Emergency Hearing | 141 |
| 42 | State Defendants' Response in Opposition to Plaintiffs' Motion for a Temporary Restraining Order | 213–38 |
| 53 | Order Consolidating Plaintiffs' Motion for a Temporary Restraining Order with Trial on the Merits | 318–19 |
| 55 | First Amended Complaint | 323–41 |
| 56 | State Defendants' Motion for Leave to File Motion to Dismiss First Amended Complaint | 343–45 |
| 80 | Second Amended Complaint | 476–97 |
| 99 | State Defendants' Motion for Leave to File Motion to Dismiss Second Amended Complaint | 599–601 |
| 109 | Order Granting State Defendants' Motion for Leave to File Motion to Dismiss Second Amended Complaint | 719–21 |
| 115 | State Defendants' First Motion to Dismiss | 792–93 |
| 116 | State Defendants' Memorandum in Support of First Motion to Dismiss | 796–820 |
| 116-1 | Tennessee Attorney General Opinion 97-139 | 823–26 |
| 116-2 | Excerpts from Biser Deposition | 827–44 |
| 116-3 | Excerpts from Patterson Deposition | 845–67 |
| 116-4 | Excerpts from Plumm Deposition | 868–78 |
| 116-5 | State-Court Order on Constitutionality of Tenn. Code Ann. § 36-3-301(a)(2) | 879–83 |
| 116-7 | Plaintiffs' Initial Disclosures, Ex. A | 889–94 |
| 116-8 | Tennessee Attorney General Opinion U97-041 | 895–98 |
| 126 | State Defendants' Motion for Extension of Time to File Pretrial Briefs Until After the Resolution of Sovereign Immunity | 1092–1102 |

| 140 | Order Denying Motion for Extension of Time to File Pretrial Briefs Until After the Resolution of Sovereign Immunity | 1271–72 |
|---|---|---|
| 141 | State Defendants' Notice of Appeal | 1273–75 |
| 187 | Order Staying Case Pending Resolution of State Appeal | 2471–76 |
| 193 | Plaintiffs' Unopposed Motion for Indicative Ruling | 2551–53 |
| 194 | Order Granting Motion for Indicative Ruling | 2560–62 |
| 204 | Order Denying Original Motions to Dismiss | 2590 |
| 208 | State Defendants' Second Motion to Dismiss | 2624–25 |
| 209 | State Defendants' Memorandum in Support of Second Motion to Dismiss | 2628–53 |
| 209-1 | Biser Deposition Excerpts | 2656–73 |
| 209-2 | Patterson Deposition Excerpts | 2674–96 |
| 209-3 | Plumm Deposition Excerpts | 2697–2707 |
| 209-4 | State Court Order on Constitutionality of Tenn. Code Ann. § 36-3-301(a)(2) | 2708–12 |
| 209-5 | Plaintiffs' Initial Disclosures | 2713–18 |
| 209-6 | Farris Deposition Excerpts | 2719–28 |
| 222 | Plaintiffs' Response to State Defendants' Second Motion to Dismiss | 2935–66 |
| 222-1 | Doran Declaration in Support of Plaintiffs' Response | 2969–3042 |
| 222-2 | Veal Declaration in Support of Plaintiffs' Response | 3043–46 |
| 226 | State Defendants' Reply in Support of Second Motion to Dismiss | 3095–3100 |
| 236 | Memorandum Opinion | 3215–46 |
| 237 | Order on Motions to Dismiss | 3247–48 |
| 239 | State Defendants' Notice of Appeal | 3253–54 |
| 252 | Notice of Cross Appeal | 3292–93 |