Nos. 21-5048 and 21-5100

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

———————————

UNIVERSAL LIFE CHURCH MONASTERY STOREHOUSE, et al.,
Plaintiffs-Appellees,

v.

WAYNE NABORS,
Defendant,

HERBERT H. SLATERY III, in his official capacity as Attorney General and
Reporter for the State of Tennessee, et al.,
Defendants-Appellants.

———————————

On Appeal from the United States District Court for the
Middle District of Tennessee
(No. 2:19-cv-00049)

---

## REPLY/CROSS-APPEAL RESPONSE BRIEF
## OF DEFENDANTS-APPELLANTS

---

HERBERT H. SLATERY III
  Attorney General and Reporter
  of the State of Tennessee

ANDRÉE S. BLUMSTEIN
  Solicitor General

LESLIE ANN BRIDGES
  Senior Deputy of Public Protection
  Section and Counsel to Attorney
  General

STEVEN A. HART
  Special Counsel

MATTHEW D. CLOUTIER
  Assistant Attorney General
  *Counsel of Record*

P.O. Box 20207
Nashville, TN 37202
(615) 741-7908
Matt.Cloutier@ag.tn.gov

# TABLE OF CONTENTS

Table of Authorities ..................................................................................................iv

Introduction ..........................................................................................................1

Argument...............................................................................................................2

   I.  Plaintiffs' Claims Are Barred by the State's Sovereign
      Immunity...................................................................................................2

      A. The Attorney General has no connection to enforcement.........................3

         1.  Attorney General opinions are not a substitute for
            enforcement ......................................................................................3

         2.  The Attorney General's right to defend the
            constitutionality of State statutes is not a substitute for
            enforcement ......................................................................................7

      B. The District Attorneys General have no connection to
         enforcement ..........................................................................................9

   II.  Plaintiffs Lack Standing to Pursue Their Claims .........................................13

      A. Plaintiffs cannot show an injury-in-fact....................................................13

      B. Plaintiffs' requested relief would not redress their injuries .....................18

   III.The District Court Properly Dismissed Plaintiffs' Claims
       Against the Governor...................................................................................24

      A. The Governor has no connection to enforcement ....................................25

      B. Dismissal of Plaintiffs' claims against the Governor is
         consistent with *Ex parte Young* ...............................................................26

Conclusion ...........................................................................................................29

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*1st Westco Corp. v. Sch. Dist. of Phila.*,
  6 F.3d 108 (3d Cir. 1993) ...................................................................................4

*Allied Artists Picture Corp. v. Rhodes*,
  679 F.2d 656 (6th Cir. 1982) .......................................................................27, 28

*Bd. of Educ. of Shelby Cnty., Tenn. v. Memphis City Bd. of Educ.*,
  No. 2:11-CV-02101-SHM, 2012 WL 6003540 (W.D. Tenn. Nov.
  30, 2012) ...........................................................................................................8

*Burns v. Helper*,
  No. 3:18-CV-01231, 2019 WL 5987707 (M.D. Tenn. Oct. 24,
  2019) ..................................................................................................................8

*California v. Texas*,
  593 U.S. ___, No. 19-840, 2021 WL 2459255 (June 17, 2021).............17, 22, 24

*Calzone v. Hawley*,
  866 F.3d 866 (8th Cir, 2017) ...........................................................................26

*Carney v. Adams*,
  141 S. Ct. 493 (2020)...................................................................................21, 22

*Ctr. for Inquiry, Inc. v. Marion Cir. Ct. Clerk*,
  758 F.3d 869 (7th Cir. 2014) ...........................................................................15

*Children's Healthcare Is a Legal Duty, Inc. v. Deters*,
  92 F.3d 1412 (6th Cir. 1996) ............................................................3, 11, 25, 28

*Citizens for Equal Prot. v. Bruning*,
  455 F.3d 859 (8th Cir. 2006) ...........................................................................6, 7

*Dig. Recognition Network, Inc. v. Hutchinson*,
  803 F.3d 952 (8th Cir. 2015) ...........................................................................6, 7

*Doe v. DeWine*,
  910 F.3d 842 (6th Cir. 2018) .........................................................................10, 19

*Doe v. Holcomb*,
883 F.3d 971 (7th Cir. 2018) ..............................................................26

*Ex parte Young*,
209 U.S. 123 (1908)..........................................................................*passim*

*F.A.A. v. Cooper*,
566 U.S. 284 (2012).................................................................................9

*Faith Baptist Church v. Waterford Twp.*,
522 F. App'x 322 (6th Cir. 2013) ...................................................16, 17

*Gay Lesbian Bisexual All. v. Evans*,
843 F. Supp. 1424 (M.D. Ala. 1993), *aff'd sub nom. Gay Lesbian
Bisexual All. v. Pryor*, 110 F.3d 1543 (11th Cir. 1997) ....................4, 5

*Grendell v. Ohio Sup. Ct.*,
252 F.3d 828 (6th Cir. 2001) ...............................................................17

*Hewitt v. Helms*,
482 U.S. 755 (1987)..........................................................................19, 21

*Hyden v. Baker*,
286 F. Supp. 475 (M.D. Tenn. 1968)......................................................8

*Larson v. Valente*,
456 U.S. 228 (1982)...............................................................................13

*Kaahumanu v. Hawaii*,
682 F.3d 789 (9th Cir. 2012) ...............................................................15

*Kelly v. Lee*,
No. 1:18-CV-00170-DCLC, 2020 WL 2120249 (E.D. Tenn. May
4, 2020) ....................................................................................................8

*Kiser v. Reitz*,
765 F.3d 601 (6th Cir. 2014) ...........................................................13, 18

*Los Angeles v. Lyons*,
461 U.S. 95 (1983)..................................................................................23

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)..................................................................18

*McBurney v. Cuccinelli*,
  616 F.3d 393 (4th Cir. 2010) .....................................................3

*Morris v. Livingston*,
  739 F.3d 740 (5th Cir. 2014) ....................................................26

*Okpalobi v. Foster*,
  244 F.3d 405 (5th Cir. 2001*)* ...................................................26

*Papasan v. Allain*,
  478 U.S. 265 (1986)..................................................................28

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984)..............................................................20, 28

*Rizzo v. Goode*,
  423 U.S. 362 (1976)..................................................................20

*Russell v. Lundergan-Grimes*,
  784 F.3d 1037 (6th Cir. 2015) ............................................*passim*

*S. Pacific Transp. Co. v. Brown*,
  651 F.2d 613 (9th Cir. 1981) ...................................................3, 4

*Shell Oil Co. v. Noel*,
  608 F.2d 208 (1st Cir. 1979)....................................................26

*State v. Black*,
  897 S.W.2d 680 (Tenn. 1995) .....................................................4

*Trump v. Hawaii*,
  138 S. Ct. 2392 (2018)........................................................17, 18

*Varner v. Stovvall*,
  500 F.3d 491, 495 (6th Cir. 2007) ...........................................14

*Zielasko v. Ohio*,
  873 F.2d 957 (6th Cir. 1989) ...................................................11

**Statutes**

Tenn. Code Ann. § 29-14-107(b)........................................................................7, 8, 9

Tenn. Code Ann. § 36-3-301(a)(2) ....................................................................*passim*

Tenn. Code Ann. § 36-3-303(a)............................................................................12

Tenn. Code Ann. § 39-16-504(a)(1) .............................................................10, 11, 12

**Other Authorities**

Tenn. Const., art. III, § 10..................................................................................25

Tenn. Att'y. Gen. Op. 97-139, 1997 WL 654324 (Oct. 9, 1997)........................6, 20

## INTRODUCTION

The Constitution protects the right to marry. It also protects Americans' freedom to practice their religion. It does not, however, establish a "right" to solemnize marriages for secular, state-law purposes. Because Plaintiffs cannot meaningfully argue otherwise, they insist that the "right" they invoke is actually the right to be free from religious discrimination. To be sure, that right does exist and is protected. But it is not unlimited—in certain situations where religion intersects with secular state laws, this Court has recognized that states may treat religious practices differently. That's what Tennessee has done here. As it has for nearly two centuries, Tennessee requires that religious officiants who seek to solemnize marriages for secular, legal purposes be ordained by a considered, deliberate, and responsible act. So with no "right" to invoke, Plaintiffs' claims would fail even if the State had enforced the challenged law.

But of course, State Defendants have not enforced—and cannot enforce—the challenged law. That lack of enforcement, and indeed lack of any action at all, means that Plaintiffs' claims do not belong in federal court. On the one hand, their claims are barred by the Eleventh Amendment. No State Defendant has ever enforced or threatened to enforce the challenged law, nor does any State Defendant have authority to enforce the challenged law. Because no State Defendant has any connection to enforcement, *Ex parte Young* does not apply and Plaintiffs' claims are barred by

1

Defendants' sovereign immunity.  And on the other hand—but for many of the same reasons—Plaintiffs lack standing.  Because no State Defendant has enforced, or even can enforce, the challenged law, Plaintiffs have suffered no cognizable injury and there is nothing for a court to enjoin, meaning that their claims are not redressable.

## ARGUMENT

State Defendants have explained that Plaintiffs' claims against them should have been dismissed on sovereign-immunity grounds because the *Ex parte Young* exception does not apply.  Plaintiffs also lack standing to bring their claims.  (Br. Defendants-Appellants ("First Br."), 13–25, 25–35.)

Plaintiffs' rebuttal arguments are unavailing, for the reasons discussed below.  Plaintiffs' conditional argument—that this Court should reverse the district court's dismissal of the Tennessee Governor as a party—also lacks merit.  The Governor has no authority to enforce the challenged law, nor has he ever enforced or threatened to enforce the challenged law against Plaintiffs.

## I.   Plaintiffs' Claims Are Barred by the State's Sovereign Immunity.

Plaintiffs' claims against the Tennessee Attorney General and the named District Attorneys General are barred by sovereign immunity because none of these Defendants has a sufficient "connection with the enforcement" of the challenged law, Tenn. Code Ann. § 36-3-301(a)(2).  (First Br., 15 (citing *Ex parte Young*, 209 U.S. 123, 157 (1908)).)

2

**A.    The Attorney General has no connection to enforcement.**

Plaintiffs insist that the Attorney General has the requisite connection to enforcement of the statute, even though he has never enforced or threatened to enforce it, and even though he has no authority to enforce it.  (*Id.* at 18.)  In support of their argument, Plaintiffs cite the same two reasons relied on by the district court: that the Attorney General has issued opinions interpreting the challenged law that county clerks have relied on, and that Tennessee law guarantees the Attorney General the right to be heard when the constitutionality of State statutes is challenged.  (Br. Respondents and Conditional Counter-Appellants ("Second Br."), 17–20, 20–21.)  But as Defendants have discussed, these facts do not provide the requisite connection under *Ex parte Young*.  (First Br., 18–23.)

**1.    Attorney General opinions are not a substitute for enforcement.**

This Court has said that a state official "must have some connection with the *enforcement*" of the challenged law because any other approach would "merely mak[e] . . . the state a party."  *Children's Healthcare Is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415–16 (6th Cir. 1996) (emphasis added) (quoting *Ex parte Young*, 209 U.S. at 157).  It therefore follows, as the Fourth Circuit has held, that an "Attorney General's duty to issue advisory opinions is . . . not sufficient to make him the proper party to litigation challenging the law."  *McBurney v. Cuccinelli*, 616 F.3d 393, 400 (4th Cir. 2010) (cleaned up); *see also S. Pacific Transp. Co. v. Brown*, 651

3

F.2d 613, 614 (9th Cir. 1981) ("The attorney general's power to direct and advise does not . . . establish sufficient connection with enforcement to satisfy *Ex Parte Young*.").  Opinions of the Tennessee Attorney General do not have the force of law and are not binding, *see State v. Black*, 897 S.W.2d 680, 683 (Tenn. 1995), and the provision of legal advice "cannot serve as a predicate for liability" under the *Ex parte Young* exception, *1st Westco Corp. v. Sch. Dist. of Phila.*, 6 F.3d 108, 114 (3d Cir. 1993).

Plaintiffs do not argue otherwise; they maintain, echoing the district court, that "the allegations here go far beyond the Attorney General simply penning advisory opinions."  (Second Br., 17 (quoting Mem. Op., R. 236, PageID# 3239).) They stress that "[c]ounty clerks have relied on [the Attorney General's] opinions when refusing to issue licenses for ULC Monastery-officiated weddings and informing ULC Monastery ministers [that] they may not perform valid marriages" (*id.* at 18), and argue that in "similar circumstances," "courts have held the state attorney general is a proper party" (*id.*).

But the circumstances to which Plaintiffs point are not similar at all.  Plaintiffs cite first to *Gay Lesbian Bisexual Alliance v. Evans*, 843 F. Supp. 1424 (M.D. Ala. 1993), *aff'd sub nom. Gay Lesbian Bisexual Alliance v. Pryor*, 110 F.3d 1543 (11th Cir. 1997).  But this decision is of no help to Plaintiffs.  There, the Gay Lesbian Bisexual Alliance, a student organization at the University of South Alabama,

4

challenged a state statute that purportedly restricted its speech and associational rights and was being used by the University to prohibit it from receiving public funding and using state facilities. *Gay Lesbian Bisexual All.*, 843 F. Supp. at 1425. It sued Alabama's attorney general, as well as several university officials. *Id.* at 1426. The district court concluded that the attorney general was a proper defendant because he is "the chief law enforcement officer of the state, and, in this capacity, is ultimately responsible for the enforcement of [the challenged law] not only in general, but *specifically against the [plaintiff] and the University of South Alabama itself.*" *Id.* (emphasis added). The court further noted that it was "allegedly in reliance on an 'advisory opinion' from the Attorney General" that "[university] officials [had] *continued their enforcement* of [the challenged law] against the [plaintiff]." *Id.* (emphasis added).

This sort of continued enforcement is wholly absent from this case. Plaintiffs allege that a single county clerk initially denied a marriage license to a couple in reliance on a Tennessee Attorney General opinion. (Second Br., 35; *see* Second Am. Compl., R. 80, PageID# 484–85, ¶ 48.) This isolated incident involving a county clerk is nothing like the actual enforcement of a law by *state* officials at the direction of the *state*'s attorney general, as alleged in *Gay Lesbian Bisexual Alliance*. What is more, the county clerk's alleged reliance here was misplaced. While the Attorney General has opined that State law renders ULC ministers unable to solemnize

5

marriages for secular, legal purposes, he has also opined that county clerks cannot refuse to issue marriage licenses for that reason. (First Br., 22 (citing Tenn. Att'y. Gen. Op. 97-139, 1997 WL 654324, at *1 (Oct. 9, 1997)).)

Next, Plaintiffs point to *Citizens for Equal Protection v. Bruning*, 455 F.3d 859 (8th Cir. 2006). That decision is similarly of no help. There, Nebraska passed a constitutional amendment defining marriage as between a man and a woman. *Citizens for Equal Prot.*, 455 F.3d at 863. Nebraska's attorney general then issued an opinion concluding that a proposed bill would violate the amendment. To challenge the amendment, the plaintiffs sued Nebraska's governor and attorney general. *See id.* Plaintiffs point out that the Eighth Circuit held that these officials were proper defendants under *Ex parte Young*. (Second Br., 19.)

But as the Eighth Circuit itself later explained, *Citizens for Equal Protection* "did not eliminate the longstanding requirement that a state official must have 'some connection with the enforcement' of the law at issue before [he or] she is subject to suit." *Dig. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 961 (8th Cir. 2015) (quoting *Ex parte Young*, 209 U.S. at 157). The attorney general was a proper defendant in *Citizens for Equal Protection* only because he was "responsible for 'policing compliance' with a constitutional amendment not only by advising the legislature on a bill's compatibility with the amendment, but also by standing ready to enforce the amendment against a statute that contravened the constitution." *Id.* at

962. "[A]uthority to advise state officials on the constitutionality of [the challenged law], by itself," the court explained, "does not suffice to establish 'some connection with the enforcement' of the [law]." *Id.*

This Court has been clear, and its precedent is controlling here: *Ex parte Young* "does not reach state officials who lack a 'special relation to the particular statute' and '[are] not expressly directed to see to its enforcement.'" *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) (alterations in original) (quoting *Ex parte Young*, 209 U.S. at 157). Tennessee's Attorney General does not have a "special relationship" to the challenged statue, and he is *indisputably not* "expressly directed to see to its enforcement." It follows that the county clerks' voluntary reliance on his non-binding opinions to deny marriage licenses cannot be a sufficient "connection with the enforcement" of the challenged law. *Ex parte Young*, 209 U.S. at 157.

### 2. The Attorney General's right to defend the constitutionality of State statutes is not a substitute for enforcement.

In support of their position that the Attorney General is a proper party, Plaintiffs also point to Tenn. Code Ann. § 29-14-107(b), which gives the Attorney General authority to be heard when the constitutionality of a State statute is challenged in a State-court proceeding. Plaintiffs argue that "the Attorney General's participation in this suit is consistent with" this statute. (Second Br., 20.) They further assert that "every district court in Tennessee" has concluded that the Attorney

General is a proper party where the constitutionality of a State statute has been challenged.  (*Id.* at 21.)

But as Defendants have explained, the statutory authority of the Attorney General to defend the constitutionality of State statutes does not satisfy *Ex Parte Young*'s connection-to-enforcement requirement.  (First Br., 18–21.)  Plaintiffs overstate the significance of the district-court decisions on which they rely to argue otherwise.  In three of the decisions—*Board of Education of Shelby County*, *Kelly*, and *Hyden*—the courts did not even consider whether *Ex parte Young* applied to the claims against the Attorney General; they simply concluded that he was an appropriate party.  *See Bd. of Educ. of Shelby Cnty., Tenn. v. Memphis City Bd. of Educ.*, No. 2:11-CV-02101-SHM, 2012 WL 6003540, at *2 (W.D. Tenn. Nov. 30, 2012), *supplemented*, No. 2:11-CV-02101-SHM, 2012 WL 6607288 (W.D. Tenn. Dec. 18, 2012); *Kelly v. Lee*, No. 1:18-CV-00170-DCLC, 2020 WL 2120249, at *3 (E.D. Tenn. May 4, 2020); *Hyden v. Baker*, 286 F. Supp. 475, 481 (M.D. Tenn. 1968).  And in the final decision, *Burns*, the court declined to dismiss the Attorney General on immunity grounds because it found that he had waived the argument. *See Burns v. Helper*, No. 3:18-CV-01231, 2019 WL 5987707, at *5 & n.2 (M.D. Tenn. Oct. 24, 2019), *report and recommendation adopted*, No. 3:18-CV-01231, 2019 WL 5964546 (M.D. Tenn. Nov. 13, 2019).

So while the Attorney General's participation in this suit may very well be "consistent with" Tenn. Code Ann. § 29-14-107(b), no court has ever held that this statute acts as a waiver of the Attorney General's Eleventh Amendment immunity. This is unsurprising. Any "waiver of sovereign immunity must be 'unequivocally expressed' in statutory text," *F.A.A. v. Cooper*, 566 U.S. 284, 290 (2012) (collecting cases), and § 29-14-107(b) does not express any waiver of the Attorney General's sovereign immunity, let alone "unequivocally." As Defendants have discussed, § 29-14-107(b) provides only that when a statute is alleged to be unconstitutional, "the attorney general and reporter shall . . . be served with a copy of the proceeding and be entitled to be heard," thus ensuring that the Attorney General may intervene in an otherwise justiciable State-court case. (First Br. 19–20.)

**B.     The District Attorneys General have no connection to enforcement.**

The District Attorneys General likewise do not fall under the *Ex parte Young* exception; they have never enforced or threatened to enforce the challenged provision, and, because it is not a criminal statute, they lack authority to enforce the challenged provision. (First Br. 23–24.) Plaintiffs argue that the District Attorneys have the requisite connection to enforcement because they "have authority to prosecute ministers for solemnizing marriages" under other State laws. (Second Br., 21, 24 (capitalization normalized).) But even if that were true, it would not be enough. Plaintiffs must show, as this Court has said, that enforcement is both a

"realistic possibility," *Russell*, 784 F.3d at 1048, and "likely," *Doe v. DeWine*, 910 F.3d 842, 848 (6th Cir. 2018). Plaintiffs have not made, and cannot make, this showing.

Plaintiffs argue that "[a] minister who solemnizes a marriage in violation of [the challenged] statute necessarily violates Tenn. Code Ann. § 39-16-504(a)(1), which criminalizes the 'making of a false entry in a government record.'" (Second Br., 24 (original alterations omitted).) Plaintiffs say that *Defendants* "cite no authority to support that a threat of prosecution is any less credible simply because violation of the challenged statute could lead to criminal prosecution under a separately codified statute." (*Id.*)

But this argument gets things backwards. *Plaintiffs* have the burden of showing that prosecution is a "realistic possibility," *Russell*, 784 F.3d at 1048, and "likely," *Doe*, 910 F.3d at 848. They are not relieved of that burden simply because they allege that prosecution will happen under a different statute. The statute Plaintiffs point to has never been enforced against them. Nor has it been enforced against anyone for the kind of conduct in which Plaintiffs intend to engage. All Plaintiffs have done, then, is identified a statute and offered their own legal theory about how that statute could hypothetically be used to prosecute them. That cannot be enough. Some novel theory that could support a prosecution under an unrelated

10

and yet-to-be-enforced statute is a far cry from the "realistic possibility" of enforcement that this Court demands. *See Russell*, 784 F.3d at 1048.

The authorities Plaintiffs cite do not support their argument. They rely heavily on *Zielasko v. Ohio*, 873 F.2d 957 (6th Cir. 1989). There, an incumbent judge wanted to seek reelection even though he was past the state constitution's mandatory retirement age for judges. *See Zielasko*, 873 F.2d at 958. For his reelection bid, the incumbent judge was statutorily required to sign a declaration of candidacy. *See id.* at 959. That declaration required candidates to state that they are qualified for the office they are seeking "under the threat of criminal penalty for 'election falsification.'" *Id.* This Court concluded that by signing the declaration, the incumbent judge would subject himself to "the real and immediate (not merely conjectural or hypothetical) harm of criminal penalty." *Id.*

Here, though, Plaintiffs will not subject themselves to any similarly "real and immediate" risk of prosecution or penalties. In *Children's Healthcare*, this Court examined its decision in *Zielasko* and pointed out that the incumbent judge there was required to "fill out a declaration of candidacy which certified that he was qualified to seek office." *Children's Healthcare*, 92 F.3d at 1416 n.10. And that declaration was "made under the *threat* of criminal penalty for 'election falsification.'" *Id.* (quoting *Zielasko*, 873 F.2d at 959) (emphasis in original). Here, by contrast, Plaintiffs merely suggest that they could be prosecuted under Tenn. Code Ann. § 39-

16-504(a)(1)—a statute that criminalizes the making of false entries in governmental records.  But a marriage certificate does not require a person to certify that they are authorized to solemnize the marriage; they need only "endorse on the license the fact and time of the marriage, and sign the license."   Tenn. Code Ann. § 36-3-303(a). Plaintiffs, then, cannot show a "realistic possibility" that a person who signs their real name and enters an accurate date would be prosecuted.

Finally, Plaintiffs assert that "the District Court correctly recognized that the district attorneys are necessary in terms of injunctive relief because if the District Court found the Act unconstitutional . . . the prosecutor would not have been bound by the injunction if he were not a party."  (Second Br., 26 (internal quotation marks omitted) (quoting Mem. Op., R. 236, PageID# 3241).)  But this argument is circular; it purports to satisfy the connected-to-enforcement requirement with the assertion that since the District Attorneys are necessary for injunctive-relief purposes, they must be connected to enforcement under *Ex parte Young*.  It thus ignores the requirement that Plaintiffs first establish a "connection to the enforcement" of § 36-3-301(a)(2) with a realistic possibility of *actual* enforcement.  The District Attorneys are not precluded from invoking their sovereign immunity when neither they nor any other defendants have any enforcement role.

## II. Plaintiffs Lack Standing to Pursue Their Claims.

For the reasons State Defendants have explained, Plaintiffs' claims also fail because they have not carried their burden of establishing standing. Specifically, Plaintiffs cannot show either an injury-in-fact or a redressable injury. (First Br., 25–35.)

### A. Plaintiffs cannot show an injury-in-fact.

As the Defendants have discussed (First Br., 26–31), Plaintiffs cannot show an injury-in-fact in part because Plaintiffs' intended conduct is not "affected with a constitutional interest." *Kiser v. Reitz*, 765 F.3d 601, 608 (6th Cir. 2014). Plaintiffs seek the ability to solemnize marriages in Tennessee, but no court has ever recognized a constitutional right to solemnize marriages for secular, State-law purposes. (First Br., 27.)

Plaintiffs' response to this reality is to suggest that the statute they challenge, Tenn. Code Ann. § 36-3-301(a)(2), invades several other constitutionally protected interests. It does not.

Plaintiffs claim, for example, that the challenged law violates their right to "perform marriages *on the same terms* as clergy and adherents subscribing to any other faith." (Second Br., 32 (emphasis in original).) This right exists, they argue, because the Constitution bars states from "officially prefer[ing]" one denomination over another. (*See id.* at 31 (quoting *Larson v. Valente*, 456 U.S. 228, 224 (1982).)

But this argument misses the point. As Defendants have noted, the challenged law does not "officially prefer[]" one denomination over another—it establishes neutral requirements for those seeking to solemnize marriages for secular, legal purposes. To be sure, those requirements apply to denominations differently depending on their practices and traditions, but that is not unconstitutional. (First Br., 30–31 (citing *Varner v. Stovall*, 500 F.3d 491, 495 (6th Cir. 2007)).)

Plaintiffs also suggest that the law limits their freedom to practice their religion. (Second Br., 29–30.) They claim that the law's very existence burdens their religious beliefs by pressuring them to turn away couples to whom they would otherwise minister. (*Id.* at 30.) But again, the conduct in which Plaintiffs seek to engage—solemnizing marriages for secular, State-law purposes—is not religious in nature. (First Br., 30.) Plaintiffs remain free to conduct religious wedding ceremonies; they need not turn away anyone who wishes to accept their religious ministrations.

And because Plaintiffs have no protected interest in the marital status of a couple under State law, they will suffer no injury if a couple decides to have a religious ceremony and then goes to a public official for secular recognition.[1] Plaintiffs claim that this "same argument" was rejected by the Seventh Circuit in

---

[1] In fact, ULC itself has advised its ministers that such a procedure does not impair their religious practice. (*See* Initial Disclosures Excerpt, R. 116-7, PageID# 816.)

14

*Center for Inquiry, Inc. v. Marion Circuit Court Clerk*, 758 F.3d 869 (7th Cir. 2014). (Second Br., 32.)  But that decision is readily distinguishable.  Indeed, Plaintiffs' contention that *Center for Inquiry* "confirms" that "states may not offer the right to solemnize marriages to adherents of one belief system to the exclusion of another" hits at precisely why it does *not* apply here.  (*Id.* at 32 n.10.)  The state law challenged in *Center for Inquiry* granted authority to solemnize marriages to specific religious groups.  758 F.3d at 871.  And anyone not on the statute's "list who purport[ed] to solemnize a marriage commit[ted] a crime."  *Id.*  Here, by contrast, Tennessee's law establishes neutral requirements that apply to all officiants, no matter their denomination.  So while the Seventh Circuit reasoned that a "state could not . . . permit Catholic priests to solemnize weddings while forbidding Baptist ministers to do so," *see id.* at 872, that is not what Tennessee has done.

Plaintiffs next argue that they have shown injury under the Free Speech Clause because they claim an interest in engaging in protected speech—performing a legal marriage ceremony as online-ordained ministers—that violates the Act.  (Second Br., 30.)  Plaintiffs, though, point to no authority supporting the proposition that "performing a legal marriage ceremony as a minister ordained online" is "protected speech."  Nor could they.  Some courts have concluded that wedding ceremonies are protected expression under the First Amendment.  *See, e.g.*, *Kaahumanu v. Hawaii*, 682 F.3d 789, 799 (9th Cir. 2012) (recognizing that the "core of the message in a

wedding is a celebration of marriage and the uniting of two people in a committed long-term relationship" and concluding that wedding ceremonies are protected expression). But no court has ever concluded that *legally solemnizing* a wedding ceremony is protected expression in any context, let alone specifically where the minister was ordained online. In other words, wedding ceremonies are protected under the First Amendment because of their expressive nature, *see id.*, not because of their legal effectiveness.

In the end, Plaintiffs' several arguments are of no significance. Even if they could identify a legally protected interest, they cannot show injury-in-fact because, as Defendants have explained, Plaintiffs cannot show a credible threat of prosecution. (First Br., 28–31.) Unable to show such a threat, Plaintiffs argue that they need not make that showing at all. Standing, they say, "is relaxed in the First Amendment context, including under the Free Exercise and Establishment Clauses," (Second Br., 33 (citations and internal quotation marks omitted).) From that premise, Plaintiffs posit that they need only allege that the challenged law has chilled their protected activity. (*Id.* at 33–36.)

While standing may be relaxed in the First Amendment context, neither this Court nor the Supreme Court has ever held that it is so relaxed that a plaintiff need only allege a *subjective* chilling effect to have standing. Rather, as this Court explained in *Faith Baptist Church v. Waterford Township* —a case Plaintiffs cite—

plaintiffs may show an injury-in-fact from a statute's chilling effects only if they can "*objectively* establish an *imminent threat* that chills protected activity." 522 F. App'x 322, 330 (6th Cir. 2013) (emphasis added); *see also Grendell v. Ohio Sup. Ct.*, 252 F.3d 828, 835 (6th Cir. 2001) (noting that "the mere fact that [the plaintiff] subjectively fears . . . sanctions, or 'feels inhibited' by the [defendant's] sanctioning power, does not objectively establish an imminent threat that chills protected activity"). Plaintiffs have not established such a threat.

Plaintiffs also argue that when "a law lacks an 'enforcement mechanism,' the 'threat of prosecution' requirement does not make sense and has not been applied." (Second Br., 34.) But that argument has just been rejected by the Supreme Court. *See California v. Texas*, 593 U.S. ___, No. 19-840, 2021 WL 2459255, at *5 (June 17, 2021) (holding that the plaintiffs lacked standing to challenge a statutory provision that "has no means of enforcement" and explaining that the Court's cases "have consistently spoken of the need to assert an injury that is the result of a statute's actual or threatened *enforcement*, whether today or in the future" (emphasis in original)).

Plaintiffs' reliance on the Supreme Court's decision in *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018), is therefore misplaced. That the *Trump* "plaintiffs demonstrated injury *not* by showing a credible threat of enforcement against them[,] but because the [travel] ban might keep them separated from relatives who wished

17

to enter the country," (Second Br., 34 (emphasis in original), undermines rather than supports Plaintiffs' position. The Court determined in *Trump* that, because the law at issue would keep the plaintiffs "separated from certain relatives who s[ought] to enter the country," the harm was "sufficiently concrete and particularized to form the basis of an Article III injury in fact." 138 S. Ct. at 2416. Thus, the Court did not dispense with the credible-prosecution requirement in the First Amendment context, it instead concluded that enforcement of the challenged law against *third parties* caused a concrete injury to the plaintiffs.

The bottom line is that to establish standing, a plaintiff must always show an injury-in-fact. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). And while the bar may be lower in a pre-enforcement, First Amendment context, it is not on the ground. A plaintiff—no matter the context—must show that a "legally protected interest has been invaded and [that] the injury is both concrete and particularized and actual or imminent, not conjectural or hypothetical." *Kiser*, 765 F.3d at 607 (quoting *Lujan*, 504 U.S. at 560) (cleaned up). Plaintiffs here cannot do so.

### B. Plaintiffs' requested relief would not redress their injuries.

For standing to exist, the plaintiff's injury must be redressable—i.e., there must be something that the court can fix. As State Defendants have explained, Plaintiffs have also failed to satisfy this redressability requirement. (First Br., 32–35.) Plaintiffs' response to Defendants' specific argument that here no judicial

pronouncement can "affect[] the behavior of the defendant towards the plaintiff," *Hewitt v. Helms*, 482 U.S. 755, 61 (1987), is that "[t]his Court rejected a similar argument in *Doe* [*v. DeWine*, 910 F.3d 842 (6th Cir. 2018)]." (Second Br., 37.) But the facts and the laws at issue in *Doe v. DeWine* were different.

In *Doe*, a plaintiff sued Ohio's attorney general and the superintendent of Ohio's Bureau of Criminal Investigation, challenging the constitutionality of a statute that denied sex offenders the right to a reclassification hearing. 910 F.3d at 845–46. The attorney general and the superintendent, this Court pointed out, were "actively involved with administering the [challenged] sex-offender laws: they promulgate regulations implementing the sex-offender registration requirements; operate the state-wide sex-offender database; and send and structure community notifications that alert citizens to the proximity of registered offenders." *Id.* at 849 (cleaned up). This Court concluded that "[t]hese are 'actions against [Doe's] interests.'" *Id.* (quoting *Russell*, 784 F.3d at 1048). So while neither the attorney general nor the superintendent had the power to give all of the relief the plaintiff sought, there was still action for the court to enjoin. *See id.* at 850. Here, by contrast, there is no action to enjoin—no State Defendant has ever enforced or threatened to enforce the challenged law against Plaintiffs.

Plaintiffs hypothesize several other forms of injunctive relief that would redress their injuries. First, Plaintiffs propose that the district court "could order the

Attorney General to withdraw and cease issuing opinions denigrating ULC Monastery." (*Id.* at 37.) This proposal raises obvious federalism problems. A federal court may of course enjoin a state official from violating the United States Constitution. *See, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984). But it is no surprise that Plaintiffs cite no authority holding that a federal court may compel a state attorney general to interpret a state law in a particular way since that sort of relief would upset the "special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law." *Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (quoting *Stefanelli v. Minard*, 342 U.S. 117, 120 (1951)).

Plaintiffs' second proposal—that the court "order the Attorney General to direct county clerks to issue and record marriage licenses for ULC Monastery-officiated marriages," (Second Br., 37)—runs into the same problems. Moreover, not only does the Attorney General lack authority to direct the conduct of the county clerks, but as noted above, the Attorney General has already opined that county clerks lack "the authority to examine the qualifications of a person seeking to solemnize a marriage" and that the "duty of the county clerk to record marriage licenses upon certification by the officiant [is] a ministerial duty." Tenn. Att'y. Gen. Op. 97-139, 1997 WL 654324, at *1 (Oct. 9, 1997).

Plaintiffs' third proposal is that the court "order the district attorneys to refrain from prosecutions for violations of the act." (Second Br., 38.) But beside the federalism problems that persist with this proposal, it ignores that there is no action of the District Attorneys to enjoin or "refrain from." Again, the District Attorneys are *already* refraining from prosecuting violations, because the challenged law has no enforcement mechanism and provides for no penalties. (First Br., 23, 32.)

Plaintiffs also allude to their request for a judgment declaring that the challenged law is unconstitutional. (Second Br. 37.) But that relief would not redress Plaintiffs' injuries either. As State Defendants have pointed out, Plaintiffs have alleged harms—the inability to civilly solemnize marriages and their feelings of discrimination—that can be traced to multiple statutory provisions, one of which has not been challenged. (First Br., 33–35.) This means that even a favorable declaratory ruling for Plaintiffs on the provision they did challenge would not redress their alleged harm; they would still be unable to civilly solemnize marriages.

More fundamentally, though, when a law has never been enforced—and indeed cannot be enforced—by Defendants, a declaration that the law is unconstitutional would be nothing more than an advisory opinion. *See Hewitt*, 482 U.S. at 761 (explaining that the "real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of*

21

*the defendant towards the plaintiff*" (emphasis in original)); *Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (noting that Article III "require[s] that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions").

The Supreme Court's very recent decision in *California v. Texas* also forecloses Plaintiffs' redressability argument. The Court held that the individual plaintiffs in that case lacked standing to challenge the minimum-coverage requirement of the federal Affordable Care Act. 2021 WL 2459255, at *4–7. The plaintiffs' "problem," the Court explained:

> [L]ies in the fact that the statutory provision, while it tells them to obtain [health-insurance] coverage, *has no means of enforcement.* . . . Because of this, there is no possible Government action that is causally connected to the plaintiffs' injury—the costs of purchasing health insurance. . . . [The plaintiffs] *have not pointed to any way in which the defendants*, the Commissioner of Internal Revenue and the Secretary of Health and Human Services, *will act to enforce* § 5000A(a). They have not shown how any other federal employees could do so either. In a word, they have not shown that any kind of Government action or conduct has caused or will cause the injury they attribute to § 5000A(a).

*Id.* at *4 (emphasis added). The Court went on to expressly address the plaintiffs' lack of standing through the lens of redressability:

> [J]ust like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement. At a minimum, this means that the dispute must "be 'real and substantial' and 'admit of specific relief through a decree of a conclusive character, *as distinguished from an opinion advising what the law would be upon a hypothetical state of facts*.'" Thus, to satisfy Article III standing, we

> must look [beyond the Declaratory Judgment Act] to find a remedy that will redress the individual plaintiffs' injuries.
>
> What is that relief? The plaintiffs did not obtain damages. Nor . . . did the plaintiffs obtain an injunction in respect to the provision they attack as unconstitutional. But, more than that: How could they have sought any such injunction? The provision is unenforceable. There is no one, and nothing, to enjoin. They cannot enjoin the Secretary of Health and Human Services, because he has no power to enforce § 5000A(a) against them. . . . In these circumstances, injunctive relief could amount to no more than a declaration that the statutory provision they attack is unconstitutional, i.e., *a declaratory judgment*. But once again, that *is the very kind of relief that cannot alone supply jurisdiction* otherwise absent.

*Id.* at *6 (emphasis added) (internal citations omitted). The Court further emphasized that "[t]he matter is not simply technical." *Id.* "To find standing here to attack an unenforceable statutory provision," it explained, "would allow a federal court to issue what would amounts to "an advisory opinion without the possibility of any judicial relief." *Id.* (quoting *Los Angeles v. Lyons*, 461 U. S. 95, 129 (1983) (Marshall, J., dissenting)).

So too here. Just as Defendants have maintained, "[Plaintiffs'] problem lies in the fact that [Tenn. Code Ann. § 36-3-301(a)(2)] has no means of enforcement." *See id.* at *4. It follows that "[t]o find standing here to attack an unenforceable statutory provision would allow a federal court to issue what would amount to an advisory opinion without the possibility of any judicial relief." *Id.* at *6 (citation and internal quotation marks omitted).

### III. The District Court Properly Dismissed Plaintiffs' Claims Against the Governor.

Cross-appealing the district-court judgment, Plaintiffs urge this Court to "reverse the District Court's dismissal of the [Tennessee] Governor to avoid [a] 'perverse reading of *Young*,'" should it reverse the district court's rulings as to the other State Defendants and conclude that they are not proper parties under *Ex parte Young*.[2] (Second Br., 43 (quoting *Russell*, 784, F.3d at 1047).)[3] But the district court rightly dismissed Plaintiffs' claims against the Governor, recognizing that Plaintiffs had failed to allege the required "connection or special relation between the law in question and the official sued." (Mem. Op. R. 236, PageID# 3237 (quoting *Ex parte Young*, 209 U.S. at 157).) Dismissal of Plaintiffs' claims against the Governor is entirely consistent with *Ex parte Young* even while no other State official is a proper defendant.

---

[2] For the same reasons that Plaintiffs lack standing to pursue their claims against the Attorney General and the District Attorneys General—i.e., the absence of any injury-in-fact that could be redressed by a court—they also lack standing to pursue their claims against the Governor. *See California v. Texas*, 2021 WL 2459255, at *4–7.

[3] This Court in *Russell* did note that "[i]t would be a perverse reading of *Young* to say that, although [the plaintiff] might have an Article III injury before the Attorney General directly communicates his intent to prosecute him, the Eleventh Amendment would nonetheless simultaneously bar [the Court] from enjoining the Attorney General's initiating a prosecution." 784 F.3d 1037, 1047 (6th Cir. 2015). But there, unlike here, the attorney general's office had "ample authority to prosecute" the plaintiff, had "repeatedly fielded and investigated complaints" about violations of the challenged law, and "promised the public that it would pursue criminal sanctions." *Id.*

**A. The Governor has no connection to enforcement.**

As discussed above and in State Defendants' opening brief, it is well settled that to be a proper defendant under *Ex parte Young*, a state official "must have some connection with the enforcement" of the challenged law because any other approach would "merely mak[e] . . . the state a party." *Ex parte Young*, 209 U.S. at 157. Without that connection, the constitutionality of any state law could be tested by a suit against the governor. *See id.*

Plaintiffs do not allege any specific enforcement actions or authorities that would provide the necessary connection between Governor Lee and § 36-3-301(a)(2). Plaintiffs simply insist that he is a proper defendant because he is "charged with taking 'care that the laws be faithfully executed.'" (Second Br., 41 (quoting Tenn. Const., art. III, § 10).)

This exact argument has consistently been rejected by this Court. *See, e.g.*, *Children's Healthcare*, 92 F.3d at 1416 ("Holding that a state official's obligation to execute the laws is a sufficient connection to the enforcement of a challenged statute would extend *Young* beyond what the Supreme Court has intended and held."); *Russell*, 784 F.3d at 1048 ("General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation

challenging the law." (cleaned up)).[4]   The district court rightly applied this controlling precedent to conclude both that there "must be some connection or some special relation between the law in question and the official sued" and that "no such connection has been alleged against Governor Lee."  (Mem. Op., R. 36, PageID# 3237.)

**B.      Dismissal of Plaintiffs' claims against the Governor is consistent with *Ex parte Young.***

Having failed to allege any connection between the Governor and the enforcement of the challenged law, Plaintiffs argue that such a connection is unnecessary.  (Second Br., 41–43.)  More specifically, they maintain that a governor is a proper defendant when the statute at issue implicates important issues of public interest and when there is no clear alternative defendant.  (*Id.* at 41–42.)  In other

---

[4] Other federal appellate courts have likewise declined to hold that a governor's general duty to execute the law is a sufficient connection to enforcement under *Ex parte Young*.  *See, e.g.*, *Doe v. Holcomb*, 883 F.3d 971, 976 (7th Cir. 2018) ("'The mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute.'" (quoting *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979))); *Calzone v. Hawley*, 866 F.3d 866, 870 (8th Cir. 2017) ("[G]eneral executive responsibility [to take care that the laws are executed] is an insufficient connection to the enforcement of a statute to avoid the Eleventh Amendment."); *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) ("The required 'connection' is not 'merely the general duty to see that the laws of the state are implemented,' but 'the particular duty to enforce the statue in question and a demonstrated willingness to exercise that duty.'" (quoting *Okpalobi v. Foster*, 244 F.3d 405, 414–16 (5th Cir. 2001)).

26

words, Plaintiffs' position is that their suit cannot be dismissed even if no Defendant has any connection to enforcement.

This position is based on Plaintiffs' reading of footnote 5 in *Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656 (6th Cir. 1982).  Plaintiffs say that footnote 5 stands for the proposition that a plaintiff may sue a state's governor—even if the governor has no connection to enforcement—when there would be no other proper defendant.  (Second Br., 42–43 (citing *Allied Artists*, 679 F.2d at 665 n.5).)

The plaintiffs in that case—a group of movie distributors and producers—sued Ohio's governor to challenge a state statute that regulated movie marketing. 679 F.2d at 658–59.  While the statute contained no "specific state enforcement provisions," *id.* at 665 n.5, the district court had determined that the plaintiffs' claims fell within the *Ex parte Young* exception and allowed them to proceed, *Allied Artists Pictures Corp. v. Rhodes*, 473 F. Supp. 560, 566 (S.D. Ohio 1979).  This Court affirmed, explaining in the footnote that "[e]ven in the absence of specific state enforcement provisions, the substantial public interest in enforcing the trade practices legislation involved . . . places a significant obligation upon the Governor to use his general authority to see that state laws are enforced."  *Allied Artists*, 679 F.2d at 665 n.5.  The Court "thus f[ou]nd that the Governor ha[d] sufficient connection with the enforcement of the act that he f[ell] outside the scope of eleventh amendment protection."  *Id.*

27

Because more recent decisions of the Supreme Court and this Court make clear that *Allied Artists* should not be followed, Plaintiffs are wrong to rely on it. In the 40 years since *Allied Artists* was decided, the Supreme Court has reaffirmed that *Ex parte Young* "has not been provided an expansive interpretation." *Pennhurst*, 465 U.S. at 102. Rather, its "applicability has been tailored to conform as precisely as possible to those specific situations in which it is necessary" and "focused on cases . . . in which the relief against the state official *directly ends the violation of federal law*." *Papasan v. Allain*, 478 U.S. 265, 277–78 (1986) (emphasis added). Indeed, this Court recognized in *Children's Healthcare*, that *Allied Artists* was "anomalous" and that it "disregard[ed]" *Ex parte Young*. *Children's Healthcare*, 92 F.3d at 1414–15, 1417 n.11.

Dismissal of Plaintiffs' claims against the Governor is thus entirely consistent with *Ex parte Young*. The Governor has no "connection or special relation" to the enforcement of the challenged law. As is the case with the claims against the Attorney General and the District Attorneys General, that absence of connection is fatal to Plaintiffs' claims against the Governor.

**CONCLUSION**

For the reasons stated here and in State Defendants' opening brief, that part of the district court's order denying State Defendants' motion to dismiss on immunity and standing grounds should be reversed. That part of the district court's order dismissing Governor Lee from the action should be affirmed.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

ANDRÉE S. BLUMSTEIN
Solicitor General

LESLIE ANN BRIDGES
Senior Deputy of Public
Protection Section and Counsel
to the Attorney General

STEVEN A. HART
Special Counsel

/s/ Matthew D. Cloutier
MATTHEW D. CLOUTIER
Assistant Attorney General

P.O. Box 20207
Nashville, TN 37202
(615) 741-7908
Matt.Cloutier@ag.tn.gov

*Counsel for Defendants-Appellants*

June 21, 2021

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2)(A) because it contains 6,936 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5)–(6) because it has been prepared in proportionally spaced typeface using Times New Roman 14-point font.

/s/ Matthew D. Cloutier
MATTHEW D. CLOUTIER
Assistant Attorney General

June 21, 2021

**CERTIFICATE OF SERVICE**

I, Matthew D. Cloutier, counsel for Defendant-Appellants and a member of the Bar of this Court, certify that, on June 21, 2021, a copy of the Brief of Defendants-Appellants was filed electronically through the appellate CM/ECF system. I further certify that all parties required to be served have been served.

/s/ Matthew D. Cloutier
MATTHEW D. CLOUTIER
Assistant Attorney General